BRUCE SHANKS, Appellant, *v.* THE DELAWARE, LACKA-WANNA AND WESTERN RAILROAD COMPANY, Respondent.

Railroads — master · and servant — negligence — Federal Employers' Liability Act — when railroad company although engaged in interstate commerce not liable for injury to employee working in shop where locomotives used in interstate commerce are repaired.

This action is brought under the Federal Employers' Liability Act of April 22, 1908 (35 Stat. at L. 65, ch. 149; U. S. Comp. Stat. Supp. 1911, p. 1322), to recover damages for personal injuries sustained by the plaintiff while engaged as an employee of the defendant. Defendant is a railroad corporation and common carrier engaged in both intrastate and interstate commerce. Plaintiff was employed as a mechanic in a shop devoted particularly to the repair of locomotive engines, and his principal work was in running a shaping machine, where he shaped parts to be used in the repair of locomotives that were in immediate need of repair. His work was generally, but not exclusively, in the repair of locomotives used in interstate commerce. The power was applied to the shaping machine used by him from a countershaft and pulley attached by hangers to girders which were about eighteen feet above the floor of the shop. The defendant desired to move such countershaft to make room for another shaping machine, and to do so it was necessary to take the countershaft down and change the hangers on which it was suspended, and plaintiff was injured while so engaged. *Held*, that plaintiff was not engaged in repairing or moving the shaping machine, but his work had to do with the supply of power

to a machine that might thereafter be used in shaping parts for the repair of locomotives; that he cannot recover under the Federal statute since it does not appear that he was, within the meaning of that act, engaged in interstate commerce when injured. (*Pedersen* v. *D., L. & W. R. R. Co.*, 229 U. S. 146, distinguished.)

*Shanks* v. *Delaware, Lackawanna & Western R. R. Co.*, 163 App. Div. 565, affirmed.

(Argued January 22, 1915; decided March 26, 1915.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered September 25, 1914, upon an order reversing a judgment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Joseph A. Shay* for appellant. Both the defendant and the plaintiff were unmistakably engaged in interstate commerce at the time of the injury. (*Pedersen* v. *D., L. & W. R. R. Co.*, 229 U. S. 146; *Lamphere* v. *O. R. & N. Co.*, 196 Fed. Rep. 336; *Horton* v. *O., etc., Co.*, 130 Pac. Rep. 897; *Johnson* v. *Southern Pacific Co.*, 196 U. S. 1; *N. P. R. Co.* v. *Maerkl*, 198 Fed. Rep. 1; *C. R. Co.* v. *Colorado*, 192 Fed. Rep. 901.)

*Frederick W. Thomson* for respondent. When the plaintiff's injuries were suffered the defendant was not engaged in interstate commerce, and the plaintiff was not employed by the defendant in such commerce. (*I. C. R. R. Co.* v. *Behrens*, 293 U. S. 473.)

CHASE, J. This action is brought under the Federal Employers' Liability Act of April 22, 1908 (35 Stat. at L. 65, ch. 149; U. S. Comp. Stat. Supp. 1911, p. 1322), to recover damages for personal injuries sustained by the plaintiff while engaged as an employee of the defendant in a shop near Hoboken, N. J.

The defendant is a railroad corporation and common carrier and at the times hereinafter mentioned was engaged in interstate commerce. It was also engaged in intrastate commerce. Its road extends from Hoboken, N. J., to Buffalo, N. Y., and passes through and is in part located in the state of Pennsylvania. The Federal Employers' Liability Act provides, "That every common carrier by railroad engaged in interstate commerce shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier or by reason of any defect or insufficiency due to its negligence in its cars, engines, appliances, machinery, track, roadbed or other equipment."

The defendant has but two shops devoted particularly to the repair of locomotive engines. One is the shop located near Hoboken, N. J., and the other is located at Scranton, Pa. The plaintiff was employed as a mechanic and his principal work was in running a shaping machine, where he shaped parts to be used in the repair of locomotives that were in immediate need of repair. His work was known as rush work. His work was generally, but not exclusively, in the repair of locomotives used in interstate commerce. The power was applied to the shaping machine used by him from a countershaft and pulley attached by hangers to girders which were about eighteen feet above the floor of the shop. The defendant desired to move such countershaft for one reason to make room for another shaping machine, and to do so it was necessary to take the countershaft down and change the hangers on which it was suspended. On top of the girders from which the countershaft was suspended were the rails constituting the track upon which a traveling crane of heavy weight was moved. On a Sunday morning the plaintiff, working over time, with a helper, was directed to move such countershaft and a platform or

scaffold was erected on which to do such work. The countershaft was taken down and placed upon the floor and while the plaintiff was engaged in making new holes in one of the girders for the purpose of fastening one of the hangers at its new proposed location and while he had his right hand over the rail on the girder in which he was making the holes, the crane was moved along without warning (as it is alleged) and a wheel cut off his hand. In his effort to save himself he involuntarily threw his left hand over the rail in front of the wheel and that too was cut off.

An examination of the record satisfies us that the question of the defendant's negligence was one of fact. The one important question for our determination in this action under the Federal Employers' Liability Act is whether the plaintiff at the time of the accident was within the meaning of that act engaged in interstate commerce.

The defendant is not liable under the act unless the plaintiff suffered injury while he was employed by the defendant as a common carrier in interstate commerce. (*Illinois Central Railroad Co. v. Behrens*, 233 U. S. 473.)

In the *Behrens* case it was held that a fireman employed on a switch engine in the city of New Orleans, the crew of which with said engine handled interstate and intrastate traffic indiscriminately, frequently moving both at once and at times turning directly from one to the other, was not engaged in interstate commerce or entitled to recover under the act for injuries arising by a collision when moving several cars loaded with freight which was wholly intrastate and upon completing that movement was to have gathered up and taken to other points several other cars as a step or link in their transportation to various destinations within and without the state.

Whether the plaintiff can recover under the act depends upon whether he was personally engaged in interstate commerce at the time of the injury. That he was not so

directly engaged must be conceded. He claims, however, that he was so engaged within the interpretation given to the act in *Pedersen* v. *D., L. & W. R. R. Co.* (229 U. S. 146). In that case the plaintiff sought to recover damages for personal injuries against the same defendant as in the case now before us and in connection with commerce intrastate and interstate carried on by it over the same system of railroad. In that case the plaintiff was employed as an ironworker in connection with the repair of a bridge used by the defendant for railroad purposes near Hoboken. The repair consisted of the removal of a girder in a bridge in regular use and the insertion of a new one in its place. The plaintiff at the time of the accident was engaged in carrying from a tool car to the bridge certain bolts or rivets which were to be used in such repair. The bridge was used in interstate and intrastate commerce. The plaintiff was struck by an intrastate passenger train, and it was alleged that such train did not give any warning. Recovery was sustained, and the court say: "That the defendant was engaged in interstate commerce is conceded, and so we are only concerned with the nature of the work in which the plaintiff was employed at the time of his injury. Among the questions which naturally arise in this connection are these: Was that work being done independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier? The answers are obvious. Tracks and bridges are as indispensable to interstate commerce by railroad as are engines and cars, and sound economic reasons unite with settled rules of law in demanding that all of these instrumentalities be kept in repair. * * * We are of opinion that the work of keeping such instrumentalities in a proper state of repair while thus used is so closely related

27

to such commerce as to be in practice and in legal contemplation a part of it.  *  *  *  The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged ?  *  *  *  Of course, we are not here concerned with the construction of tracks, bridges, engines or cars which have not as yet become instrumentalities in such commerce, but only with the work of maintaining them in proper condition after they have become such instrumentalities and during their use as such.

" True, a track or bridge may be used in both interstate and intrastate commerce, but when it is so used it is none the less an instrumentality of the former; nor does its double use prevent the employment of those who are engaged in its repair or in keeping it in suitable condition for use from being an employment in interstate commerce."  (p. 151.)

It is of great importance to employers and employees that rules be established by which it can be determined with reasonable certainty whether a person at a given time is engaged in interstate or intrastate commerce. It does not seem to us that each specific act of employment by a carrier can be satisfactorily defined and classified by generally and unqualifiedly including as a part of interstate commerce every act of employment closely connected therewith, and every act the performance of which is not a matter of indifference in such commerce.

It is not a matter of indifference to interstate commerce whether ore is mined and iron is manufactured, but employment in mining and manufacturing is so remote from the employment intended by the act that it would not, we assume, be claimed by any one that persons so remotely employed, even if so employed by the carrier, are engaged in interstate commerce within the meaning of the act.   In every case a person to be protected by the Federal Employers' Liability Act must, by the express terms of the act, be engaged in commerce.

Conceding, as was held in the *Pedersen* case, that a person directly engaged in assembling material for the immediate repair of a bridge necessarily used in interstate commerce by a carrier, is engaged in interstate commerce, it does not follow that a person engaged at a shaping machine in a repair shop is engaged in interstate commerce, at least unless it appears that the work he is doing is for the immediate repair of a locomotive or other instrumentality actually engaged in interstate commerce. Making parts to be used in a locomotive is a step further removed from commerce than the assembling of parts for the locomotive, and corresponds to the work of making bolts and rivets for use in bridge repairs. If the plaintiff had been injured while engaged at the shaping machine in shaping parts for immediate use in a locomotive engaged in interstate commerce, it may be assumed that his claim would come within the terms of the statute, but if he was so engaged in shaping parts for a locomotive used in intrastate commerce, his claim would not, under the decision in the *Behrens* case, be included in the act.

The plaintiff in moving the countershaft was doing millwright work that in itself had no immediate or direct connection with commerce. He was not engaged in repairing or moving the shaping machine. The shaping machine was in no way affected by the operation of the crane. His work, in the most favorable light for the plaintiff, had to do with the supply of power to a machine that might thereafter be used in shaping parts for the repair of locomotives. It does not even appear that his work as a millwright was designed to bring about an improvement in the power or otherwise of the shaping machine that he had theretofore used. Even if it was designed to improve the power supplied to that machine, or to enable the defendant to add to the number of machines that could thereafter be used indiscriminately in shaping parts to repair interstate and intrastate locomotives, his work was at least one or more steps further

removed from interstate commerce than was the plaintiff's work in the *Pedersen* case. The rearrangement of the countershaft may have been desirable as a matter of shop arrangement or for economy, but it was not apparently essential for any purpose. It was remote from any act of commerce. If the plaintiff, while engaged in millwright work, as appears in this case, can be said to have been engaged in interstate commerce, all work in the repair of the shop and shop machinery where interstate locomotives are repaired may in some remote degree be said to constitute commerce.

It was, of course, necessary in running the shaping machine to obtain power, and to obtain power it was necessary to burn coal, and to obtain coal it was necessary to perform other acts far removed from the purposes of the statute in question, but these several steps surely do not constitute interstate commerce by a carrier, or commerce of any kind.

Unless some reasonable and practical limit and boundary is prescribed in acts constituting employment in interstate commerce, every act that can be shown to have affected interstate commerce in a remote degree, is included within the terms of the statute. The decision in the *Pedersen* case has been frequently referred to as extending the provisions of the act to the limit of legislative intention, and we think it should not be by us further extended. The remedy of the unfortunate plaintiff is by the Compensation Act of the state of New Jersey, in which state the accident occurred.

The judgment should be affirmed, with costs.

SEABURY, J. (dissenting). I dissent. The plaintiff was employed by the defendant in a repair shop devoted principally to the repair of locomotives transporting passenger and freight trains between Hoboken, N. J., and Scranton, Pa. The defendant had only two shops devoted to this purpose. One was the shop in Hoboken where the plain-

tiff was employed, and the other was at Scranton. The "rush work" which plaintiff was employed to do consisted in repairing broken valves or other necessary parts of locomotives engaged in interstate commerce, although sometimes locomotives engaged in intrastate commerce were sent for repair to the shop where plaintiff worked. In the shop where plaintiff worked there was an electric crane used for transporting parts of locomotives from one part of the shop to the other. The crane operated on wheels which ran on rails or girders about thirty feet above the floor. The rails or girders were parallel and ran the whole length of the shop. The crane was operated by a man who sat in the center of it and it is said to have moved "the same as a trolley." When the crane reached its destination the operator lowered his "block and fall" and picked up whatever was required and the crane carried it to another part of the shop. It was not equipped with any signal. The only method by which workmen were warned that the crane was in motion was for the operator to shout, "Keep clear there" or "Get out of the way."

In the shop where the plaintiff worked there was a shaping machine. The function of this machine was to fashion keys, cotter pins and brasses to be used for keeping in place the piston rods in the crossheads of locomotives. The machine was driven by a countershaft which was affixed to the girder or rail upon which the wheels of the electric crane traveled. On the day of the accident the plaintiff was engaged, under the direction of the superintendent, in repairing the shaping machine, by moving it two feet to make room for the shaft. In removing it, it was necessary to take down the countershaft, to bore new holes in the girder and to refasten the hangers and countershaft so that the shaping machine could be used without interruption from the operation of the crane. While engaged in this work plaintiff stepped on the girder. Without warning the crane came upon

him and knocked him off the girder. In falling he threw out his left hand and caught hold of the rail. The crane cut this hand off and to keep from falling plaintiff again caught the rail with his other hand. This hand was also struck by the crane. The result of the accident to the plaintiff was that he lost both hands. The defendant offered no evidence. This action is brought under the Federal Employers' Liability Act of April 22, 1908 (35 Stat. at L. 65, chap. 149; U. S. Comp. Stat. Supp. 1911, p. 1322). The act provides:

" That every common carrier by railroad engaged in interstate commerce shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier, or by reason of any defect or insufficiency due to its negligence, in its cars, engines, appliances, machinery, track, roadbed or other equipment."

The verdict of the jury established that the injuries which the plaintiff sustained were due to the negligence of the defendant. The learned Appellate Division reversed the judgment entered upon the verdict of the jury in favor of the plaintiff on the ground that the plaintiff was not at the time of the accident engaged in interstate commerce. In the opinion below two suggestions are made which seem to me to have no importance in this case. One relates to the fact that at the time of the accident the plaintiff was engaged in Sunday work, from which the inference is suggested that this was not the regular work of the plaintiff. The fact shown by the evidence is, that repair work in this shop was done on Sundays as well as on other days and the fact that the plaintiff was engaged in Sunday work injects no exceptional feature into the case. The other suggestion, made below, is that the shop in which plaintiff worked was also used as the repair shop of a railroad which had extensive local service in which the locomotives were used only in intrastate commerce.

It appears from the testimony that the "rush work" upon
which plaintiff was engaged was generally done upon
locomotives used in interstate commerce and that this was
the principal work of that shop.    Upon the trial it was
conceded that the defendant at the time of the accident
was engaged in interstate commerce.    The claim is made
that the plaintiff was not at the time of the accident
engaged in interstate commerce.    If the plaintiff had been
engaged at the time of the accident in working upon a
locomotive engaged in interstate commerce, it is conceded
that he would be within the Federal statute.    Is he with-
out the protection of this statute because he was working
to put in order a machine that was to be used in repair-
ing locomotives engaged in interstate commerce ?    In my
opinion he was not.    The work of repairing the shaping
machine was not independent of interstate commerce.
It was essential to the carrying on of that commerce.
The work of putting that machine in order so that it could
be used in the repair of locomotives engaged in interstate
commerce, was just as much an act of interstate com-
merce as if the work had been done upon such a locomotive.
The work in which the plaintiff was engaged was, as
the United States Supreme Court said in the *Pedersen
Case* (229 U. S. 146), "so closely related to such com-
merce as to be in practice and in legal contemplation a
part of it."    In that case it was held that a plaintiff who
was acting under the direction of his foreman and injured
while carrying bolts from a tool car to a bridge which was
used in interstate commerce, was engaged in interstate
commerce.    In his opinion, rendered in that case, Mr.
Justice VAN DEVANTER said: "The point is made that the
plaintiff was not at the time of his injury engaged in
removing the old girder and inserting the new one, but
was merely carrying to the place where that work was to
be done some of the materials to be used therein.    We
think there is no merit in this.    It was necessary to the
repair of the bridge that the materials be at hand, and

the act of taking them there was a part of that work. In other words, it was a minor task which was essentially a part of the larger one, as is the case when an engineer takes his engine from the round house to the track on which are the cars he is to haul in interstate commerce." (p. 152.)

This is a case where the plaintiff was injured while engaged in the performance of an act necessary to maintaining in proper condition the shaping machine which was as much an instrumentality of interstate commerce as are bolts used in the repair of a bridge. Without this machine the locomotives engaged in interstate commerce could not have been repaired and put in a condition to be used in such commerce. It may have been minor work, but it was none the less an essential part of the larger work of putting in repair locomotives engaged in interstate commerce. The *Pedersen Case* (*supra*) seems to me to sustain the contention of the plaintiff that at the time of the accident he was engaged in interstate commerce. Since that case was decided it has been held that a boilermaker's helper employed in the shop of a railroad company, injured while assisting in the repair of an engine used in interstate commerce, is within the statute. (*Law* v. *Illinois Central R. Co.*, 208 Fed. Rep. 869.) In the recent case of *Barlow* v. *Lehigh Valley Railroad Co.* (214 N. Y. 116, 119) it was said by Judge MILLER, speaking for this court: "If the plaintiff had actually been coaling an engine preparatory to its moving interstate cars, he would plainly have been engaged in interstate commerce. * * * The placing of the coal cars on the trestle was one step removed from such work, but it was certainly no more remote than the carrying of bolts to repair a bridge, which was held to be so closely connected with interstate commerce as to be a part of it."

In the *Pedersen Case* (*supra*) the court said: "The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged." It is

clear that the *construction* of tracks, bridges, engines or cars or shops to be used for the repair of such cars is not an act done in interstate commerce, because until constructed these things "have not as yet become instrumentalities in such commerce." But after these things have been constructed and have been used as instrumentalities of such commerce, the work of maintaining them in proper condition is work done in interstate commerce. Such is, as I understand it, the rule which the United States Supreme Court has applied in its construction of the Federal Employers' Liability Act and I think that we should apply it to this case. The test prescribed in the *Pedersen Case (supra)* has the merit of definiteness. It draws a line of distinction between construction and the work of maintaining in proper repair. Until the track or bridge or car, shop or whatever it is, actually becomes an instrumentality of interstate commerce the provisions of the Federal statute have no application. After construction, and after it has been placed in use and has taken on the character of an instrumentality of interstate commerce, any act done in maintaining it is within the Federal statute. One of the chief merits of the construction put upon the statute by the United States Supreme Court is the clearness with which it defines the line of demarcation between what is and what is not within the statute, and thus provides a definite test by which the person injured may determine whether his remedy is under the Federal statute or under the state law. The fact that the shaping machine upon which the plaintiff was working was used to repair locomotives engaged in intrastate commerce, as well as locomotives engaged in interstate commerce, did not cause it to cease to be an instrumentality of interstate commerce. In the *Pedersen* case it was said: "True, a track or bridge may be used on both interstate and intrastate commerce, but when it is so used it is none the less an instrumentality of the former."

In my opinion this case is within the provisions of the Federal statute as that statute has been construed by the United States Supreme Court. I, therefore, vote in favor of the reversal of the judgment of the Appellate Division which reversed the judgment entered upon the verdict of the jury in favor of the plaintiff.

WILLARD BARTLETT, Ch. J., HISCOCK, CUDDEBACK and MILLER, JJ., concur with CHASE, J.; SEABURY, J., reads dissenting opinion, and CARDOZO, J., concurs.

Judgment affirmed.