MOORE v. LEHIGH VALLEY R. CO. (No. 151/77.)

(Supreme Court, Appellate Division, Third Department. July 1, 1915.)

1. MASTER AND SERVANT ⊕⟶16½, New, vol. 16 Key-No. Series—WORKMEN'S COMPENSATION ACT—CONSTITUTIONALITY.

The Workmen's Compensation Law (Laws 1913, c. 816 [Consol. Laws, c. 67] as re-enacted and amended by Laws 1914, c. 41, and by Laws 1914, c. 316, and Laws 1915, cc. 167, 168), enacted to assure compensation for injuries or death of certain employés in the course of their employment, is constitutional.

2. MASTER AND SERVANT ⊕⟶87½, New, vol. 16 Key-No. Series—WORKMEN'S COMPENSATION ACT—INTERFERENCE WITH INTERSTATE COMMERCE.

Workmen's Compensation Law (Laws 1913, c. 816 [Consol. Laws, c. 67] as re-enacted and amended by Laws 1914, c. 41, and by Laws 1914, c. 316, and Laws 1915, cc. 167, 168), declaring by section 114, that the act shall apply to employers and employés engaged in intrastate and in interstate commerce for whom a rule of liability or method of compensation has been or may be established by Congress, only so far as their mutual connection with intrastate work may and shall be clearly separable from interstate commerce, except that such employer and his employés working only in the state may, subject to the approval of and as provided by the commission, and so far as not forbidden by any act of Congress, accept the provisions of the chapter, does not exclude an employé injured in interstate commerce from claiming benefits under the law, where the injury was in no way attributable to the negligence of the employer, but was, as to him, wholly accidental.

3. MASTER AND SERVANT ⊕⟶87½, New, vol. 16 Key-No. Series—WORKMEN'S COMPENSATION ACT—"ACCIDENTAL"—"ARISING OUT OF AND IN THE COURSE OF HIS EMPLOYMENT."

Workmen's Compensation Law (Laws 1913, c. 816 [Consol. Laws, c. 67] as re-enacted and amended by Laws 1914, c. 41, and by Laws 1914, c. 316, and Laws 1915, cc. 167, 168) provides by section 10 that every employer subject to the provisions of the chapter shall pay or provide, as thereby required, compensation according to the schedules of the article for the disability of his employés, resulting from an accidental personal injury arising out of and in the course of his employment, without regard to fault as a cause of such injury. Claimant, a lineman, in the employ of an interstate railway maintaining a telegraph and telephone line along its right of way, was engaged in erecting a new line when a violent rainstorm arose, and, as defendant provided no shelter, but left each man to find shelter as he could, though it made no deduction of wages for interference with the work, claimant, with others, went under cars on a switch, where an engine of another railway moved the cars standing on the switch, and claimant was struck by a projection of the car, and fell over, so that his legs came on the track and were cut off. Held, that the injury was "accidental," in the sense of happening by chance, unexpectedly, or as not expected, from an unforeseen and unexpected, unusual occurrence, and that the injury was one "arising out of and in the course of his employment," so that an award of compensation was properly made.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accident.]

4. MASTER AND SERVANT ⊕⟶87½, New, vol. 16 Key-No. Series—WORKMEN'S COMPENSATION ACT—CONSTRUCTION.

The Workmen's Compensation Law (Laws 1913, c. 816 [Consol. Laws, c. 67] as re-enacted and amended by Laws 1914, c. 41, and by Laws 1914, c. 316, and Laws 1915, cc. 167, 168), enacted to assure compensation for injuries or death of employés in the course of their employment, was intended to make the risk of an accidental injury, even though happening through

⊕⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the fault of the workman himself, an element in the cost of production to be borne by the community in general, and should be construed liberally, and be given as broad an interpretation as may fairly be given it.

Appeal from Workmen's Compensation Commission.

Proceeding under the Workmen's Compensation Law by Ralph Raymond Moore, employé, to obtain compensation for personal injury, opposed by the Lehigh Valley Railroad Company, employer. Compensation was awarded by the Workmen's Compensation Commission, and the employer appeals. Award affirmed.

Argued before SMITH, P. J., and LYON, HOWARD, and WOODWARD, JJ.

B. F. La Rue, of New York City (E. H. Boles, of New York City, of counsel), for appellant.

Egburt E. Woodbury, Atty. Gen. (E. C. Aiken, of Albany, of counsel) for the People.

Jeremiah F. Connor, of New York City, for State Workmen's Compensation Commission.

LYON, J. This is an appeal from an award under the Workmen's Compensation Law. The vital question involved is whether the injury sustained by the claimant arose out of his employment. The claimant was a lineman in the employ of the defendant, which owned and operated a steam railroad, and maintained a line of poles along its right of way, from Jersey City, N. J., to Buffalo, N. Y., passing through the town of Le Roy, N. Y. These poles carried telegraph and telephone wires used by the appellant in its commercial business, and for the guidance, through its signal system, of its engineers operating interstate and intrastate trains, and also carried wires operated by the Western Union Telegraph Company under some arrangement with the defendant. At North Le Roy, N. Y., the defendant's line of poles was located in such dangerous proximity to a switch, known as the "Buffalo, Rochester & Pittsburg switch," that it was decided by the defendant to relocate the line at that point. For this purpose the defendant, at the time the claimant was injured, was erecting a new line of poles and wires upon the opposite side of its track, not disturbing the former line, which it intended to continue to use until the construction of the new line had been completed and connection made with it.

On July 23, 1914, prior to connection having been made with the new line, and while the claimant was working thereon, a violent rainstorm arose. It was not the custom of the defendant to furnish shelter for its linemen in the event of sudden storms, and there was no rule of the defendant as to what the men were to do in such contingency, but each man was supposed to find shelter wherever he could. The defendant was not accustomed to make any deductions in the wages of its linemen by reason of sudden storms interfering with the work, and the defendant made no such deduction upon this occasion. Claimant and several of the other workmen stood under a tree until it no longer furnished protection. Some of the men went into a paper mill near by. There being no more room there, and apparently no other available shelter, the defendant's foreman, the claimant, and two other of defendant's

workmen found shelter under cars standing upon this switch, about a quarter of a mile from the place where they had been working. While there an engine of the Buffalo, Rochester & Pittsburg Railroad Company moved the cars standing upon the switch, and the claimant, who was sitting with his arms folded, was struck upon the forehead by a projection of the car and fell over, and in some manner his legs came upon the track and were run over and cut off below the knees. The claimant had not been forbidden to seek shelter under cars, and there was no rule of the defendant to that effect. The Workmen's Compensation Commission awarded the claimant, in the absence of proof to the contrary, as for a permanent total disability, two-thirds of his weekly wages for the remainder of his life. Upon the hearing before the Commission the defendant contended that, being an interstate railroad, its employés did not come within the provisions of the Compensation Law. The appellant has taken this appeal from the award, basing its claim of right to reversal upon the grounds that the Workmen's Compensation Law is unconstitutional, in that it contravenes the provisions of the fourteenth amendment of the federal Constitution; that at the time of receiving the injury the claimant was engaged in interstate commerce, and that Congress, in passing the Safety Appliance, Hours of Service, and Employers' Liability Acts, had fully legislated with reference to the subject of interstate commerce, to the exclusion of all state legislation; that the State Compensation Commission was without authority to make an award, for the reason that the claimant was not engaged in state commerce at the time of receiving his injury, within the provisions of section 114 of the Workmen's Compensation Law; and also upon the ground that the injury to claimant did not arise out of and in the course of his employment.

[1, 2] In the case of Jensen v. Southern Pacific Co., 167 App. Div. 945, 152 N. Y. Supp. 1120, and the Burns Case, 167 App. Div. 945, 152 N. Y. Supp. 1101, and Walker Case, 167 App. Div. 945, 152 N. Y. Supp. 1147, argued therewith, decided by us at the March term, in the Court of Appeals, 109 N. E. 600, 606, 604, we held the Workmen's Compensation Act to be constitutional; and in the case of Winfield v. New York Central & Hudson R. R. Co., 168 App. Div. 351, 153 N. Y. Supp. 499, decided by us by a divided court at the May term, we held that the claimant, although engaged in interstate commerce, was not excluded by section 114 of the Workmen's Compensation Law from claiming benefits under that law, where the injury was in no way attributable to the negligence of the employer, but was as to him wholly accidental.

[3] In view of these decisions the questions involved therein are no longer open ones in this court, and the only question which need now be considered is whether the injury sustained by the claimant arose out of and in the course of his employment, within the intent of the act. Section 10 of the Workmen's Compensation Law (chapter 67, Consol. Laws, chapter 816, Laws of 1913, as re-enacted and amended by chapter 41, Laws of 1914, and amended by chapter 316, Laws of 1914, and chapters 167, 168, Laws of 1915), provides that:

"Every employer, subject to the provisions of this chapter, shall pay or provide as required by this chapter, compensation according to the schedules

of this article for the disability or death of his employé resulting from an *accidental* personal injury sustained by the employé *arising out of and in the course of his employment*, without regard to fault as a cause of such injury, except where the injury is occasioned by the willful intention of the injured employé to bring about the injury or death of himself or of another, or where the injury results solely from the intoxication of the injured employé while on duty."

The construction of telegraph and telephone lines was one of the employments covered by the Compensation Law. Concededly, the injury to the claimant was not occasioned by his willful intention or intoxication, and was accidental within the meaning of the statute.

The House of Lords defined the meaning of "personal injury by accident" and "an unlooked for mishap, or an untoward event which is not expected or designed." Fenton v. Thorley & Co. [1903] A. C. 443, 5 W. C. C. 1. The meaning of the word "accident," as contained in the New Jersey Compensation Act, is an unlooked for and untoward event which is not expected or designed. Bryant v. Fissell, 84 N. J. Law, 72, 86 Atl. 458. The United States Supreme Court has defined the term "accidental," as used in an accidental insurance policy, as used "in its ordinary, popular sense, as meaning 'happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected;' that, if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs which produces the injury, then the injury has resulted through accidental means." Mutual Acc. Ass'n v. Barry, 131 U. S. 100, 121, 9 Sup. Ct. 755, 762 (33 L. Ed. 60).

The use of the conjunctive in the section above quoted indicates that the accidental injury must both arise out of and in the course of the employment. An accidental injury sustained during the course of the employment, but not arising out of the employment, as well as such an injury arising out of the employment, but not sustained during the course of the employment, does not fall within the provisions of the Compensation Law.

That the injury was sustained by claimant during the course—that is the period, or time, or extent—of the employment is not seriously disputed by the defendant; but the defendant strenuously contends that the injury did not arise out of the employment. That the injuries occurred during working hours which were continuous, that it was customary for defendant's linemen to cease work and obtain shelter during sudden storms, and that no deduction was made from the ordinary daily wages paid the workmen by reason thereof, is conceded. It was not only customary that the claimant should seek shelter from the storm, but doing so was not a remote, but a necessary, and unquestionably frequent, incident of his employment during the summer months. Had he taken shelter in the paper mill, and the roof fallen in, or the floor given way, and he been accidentally injured, he would have been entitled to the benefit of the Compensation Law. Whether a place in a stone crusher being operated by machinery, or under a car standing upon a switch, was the safer place, does not appear. The four linemen

chose places under the cars. However, assuming that the place under the car was the more dangerous, the fact that the plaintiff's judgment led him to choose it, and that he was injured there, does not bar him from the operation of the act. Contributory negligence furnishes no ground of defense. The Compensation Law says that the employer shall provide compensation "without regard to fault as a cause of such injury." The risk of accidental injury was incidental to the claimant seeking and obtaining shelter, and to his employment, and was fairly within the contemplation of both employer and employé. The act of seeking and obtaining shelter arose out of—that is, was within the scope or the sphere of—his employment, and was a necessary adjunct and an incident to his engaging in and continuing such employment.

The language "arising out of and in the course of the employment" is also used in the English act, and we may therefore properly examine the decisions of the courts of that country for their views as to the construction of this language as applied to cases more or less similar to the case before us. Where, by an arrangement between a railway company and certain employés, they were allowed to go to a cabin on the railway company's premises for certain meals, and one of such employés was returning from the cabin after having a meal there, and was knocked down by a car which was being shunted on one of the company's tracks, it was held that the injury arose out of and in the course of the employment. Earnshaw v. Lancashire & Y. Ry. Co., 115 L. T. Jour. 89, 5 B. W. C. C. 28.

A night watchman, who left his box and went into a shanty, where tools were kept, to cook and to eat his food, and was injured by the falling of the shanty, was held to have been injured by accident arising out of and in the course of his employment. Morris v. Lambreth Borough Council [1905] 22 T. L. R. 22, 8 W. C. C. 1 (1 Brad. 448).

A bricklayer, who was paid according to the number of hours he worked, remained in the building during the noon hour, although the workmen employed on the building usually went away and sat down under a wall to eat his dinner. The wall fell while he was sitting there and injured him. The county judge was of the opinion that, as he had sat down merely for the purpose of eating his dinner, the accident could not be said to have arisen out of and in the course of the employment. The Court of Appeal held that the time of employment covered all his movements within the ambit of his premises where he was employed which were ancillary to the work which he had to do, and that the court should take a broader view and treat him as still in the employment. Collins, M. R., said:

"It was to the interest of the respondent that he should eat the necessary food to enable him to do his work, and he was allowed as part of the terms of employment to stay on the premises during dinner hour and eat his dinner there. We cannot say that it is an inference of law that, because he was eating his dinner and was not paid wages in respect of the dinner hour, he ceased to be in the respondent's employ. I think that the accident here arose out of and in the course of the employment."

All the other judges concurred in that conclusion. Blovelt v. Sawyer, 1 K. B. 271, 89 L. T. 658, 6 W. C. C. 16.

A lighterman, while waiting for the tide to ebb sufficiently to allow

him to go to work to pump out a barge, went to a small boat about 50 yards from the barge to rest, and in trying to get into the boat was injured, it was held by the Court of Appeal that his injury arose out of and in the course of his employment.  May v. Ison, 7 B. W. C. C. 148, 110 L. T. 525.

A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service.  Pope v. Hill's Plymouth Co., 102 L. T. 632, and on appeal [1912] 105 L. T. 678.

Of cases other than those of the English courts, the following are more or less in point:

In the case of North Carolina R. Co. v. Zachary, 232 U. S. 248, 34 Sup. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159, it was held that where an engineer, who had prepared his engine for a trip, had left it to go to his boarding house a short distance away, and was run over and killed while crossing a track en route to his house, he was then in the employ of the company.  The court said:

"There is nothing to indicate that this brief visit to the boarding house was at all out of the ordinary, or was inconsistent with his duty to his employer. It seems to us clear that the man was still 'on duty,' and employed in commerce, notwithstanding his temporary absence from the locomotive engine."

Where a railroad employé, in crossing the tracks at a public crossing to reach a toilet, was struck by an automobile and thrown upon the tracks, where he was subsequently struck by one of the defendant's trains, the accident was one "arising out of and in the course of the employment," within the meaning of the Employers' Liability Act, for the resulting fatal injury.  Zabriskie v. Erie R. Co. (N. J. Sup. 1912) 88 Atl. 824.

An injury sustained by a workman who is employed by the week to work in a room leased to his employer, in the building owned by the lessor, when the workman on his way to lunch, at the noon hour, has left the workroom, and is descending the stairway, which is in control of the owner of the building, but which the employer and his employés have the right to use as the only means available for going to and from the workman's place of employment, can be said to have arisen out of and in the course of his employment within the meaning of the Workmen's Compensation Act.  Sundine's Case, 218 Mass. 1, 105 N. E. 433.

· We have carefully examined the cases cited by the defendant, and, so far as the facts in any of such cases are at all similar to those in the case at bar, the claimant, when injured, was doing an act, or was at a place which his employer had expressly forbidden.  Thus, in the case of Parker v. Hambrook, 5 B. W. C. C. 608, before the Court of Appeal in July, 1912, and which is referred to in the defendant's brief as a case that closely resembles the case at bar, the headnote, which correctly states the substance of the decision reads:

"A workman was employed to get flints on the surface, or just below the surface, of a quarry. He was expressly forbidden to go into the trench, 11 feet deep. The workman was paid according to the number of flints dug out. To take shelter from the rain and to get more flints he went into the trench

and was smothered by a fall of earth. Held, the accident did not arise out of and in the course of the employment."

The defendant also cites the case of Weighill v. South Henton Coal Co., 4 B. W. C. C. 141, before the Court of Appeal in March, 1911, where a collier in a coal mine was ordered to cut the coal in the colliery. He left his work and went to cut coal in a part of the mine where it was forbidden by special rule to cut any. He thereby undermined some props and caused a fall, which killed him. Held, that the accident did not arise out of and in the course of his employment.

However, in the case of Harding v. Bryndda Colliery Co., Ltd. [1911] 2 K. B. 747, 4 B. W. C. C. 269, the Court of Appeal, distinguishing the Weighill Case, held, where a collier who had been set to drill a hole from above into a seam, in order to draw off gases and render safe the seam, which was marked off as forbidden, and was told that he must not go into the seam to see if the drill was running straight, but nevertheless went and was suffocated, that there was evidence to support the finding of the county judge that the accident arose out of and in the course of the employment, and that the appeal by the employers from the award should be dismissed.

In the case at bar the claimant violated no rule of his employer, did no forbidden act, and accepted with the knowledge of defendant's foreman the only shelter available, unless it might have been a place in the stone crusher which was being operated, to the noise of which he seems to attribute his failure to hear the moving locomotive. The defendant, in its brief relating to this subject, says:

"If respondent, therefore, had gone under the cars to get a wire that had become entangled with the underside of the car, and while endeavoring to get it loose was injured, his accident would have arisen out of his employment, because he would have been performing an act to promote the business of the master, and the accident would have been closely allied to or connected with the work of the employer."

Obtaining shelter from a violent storm, in order that he might be able to resume work when the storm was over, was not only necessary to the preservation of the claimant's health, and perhaps his life, but was incident to the claimant's work, and was an act promoting the business of the master.

I have not taken up the question as to whether building the new line, with which connection had not been made at the time claimant was injured, and which had not yet become an instrumentality of commerce, was intrastate, and not interstate, as claimed by the respondent, as in the view we have taken in prior cases the question does not seem to be important. However, there may be cited, as bearing on this question, Pedersen v. D., L. & W. R. R. Co., 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153, and Shanks v. D., L. & W. R. R. Co., 214 N. Y. 413, 420, 108 N. E. 644. See, also, dissenting opinion, 214 N. Y. 425, 108 N. E. 646.

[4] That the purpose of the Workmen's Compensation Law was to make the risk of an accidental injury one of the industry itself, even when happening through the fault of the workman, treating it as an element in the cost of production, to be added thereto, and hence

borne by the community in general, and that the act should be construed liberally, and not strictly, as a statute in derogation of the common law, and should receive as broad an interpretation as can fairly be given it, cannot be questioned. However, the purposes of the law have been most excellently stated by Justice Woodward in his opinion in the Rheinwald Case, 168 App. Div. 425, 153 N. Y. Supp. 598, recently decided by this court, and further comment is needless.

I think that the injury to the claimant arose out of and in the course of his employment, within the intent of the statute, and hence that the award of the Compensation Commission should be affirmed. All concur; SMITH, P. J., in result.