Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of CLINTON D. FOWLER, Respondent, for Compensation under the Workmen's Compensation Law, *v.* RISEDORPH BOTTLING COMPANY, Employer, and ZURICH GENERAL ACCIDENT AND LIABILITY INSURANCE COMPANY, LIMITED, Insurance Carrier, Appellants.

Third Department, November 15, 1916.

Workmen's Compensation Law — right of employee suffering from result of cerebral hemorrhage to compensation.

A person employed as a bottler, seized with a stroke of apoplexy by reason of the strain occasioned by lifting a barrel which he was assisting another in placing on the third tier, which resulted in a cerebral hemorrhage, suffered an accidental injury arising out of and in the course of his employment, within the intent and meaning of the Workmen's Compensation Law, especially where it appears that it was usual to pile the barrels only two tiers high; that said employee had always been in good health; that while raising the barrel he felt dizzy, and had severe pains in the head.

The statute does not require that the nature of the injury shall be such as to present a visible or external sign.

APPEAL by Risedorph Bottling Company and another from an award of the State Industrial Commission, entered in the office of said Commission on the 12th day of November, 1915, which said award was reaffirmed on the 14th day of March, 1916.

*Alfred W. Andrews* [*John N. Carlisle* and *Charles B. Sullivan* of counsel], for the appellants.

*Egburt E. Woodbury, Attorney-General* [*E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondents.

LYON, J.:

The question involved upon this appeal is the right to compensation of an employee suffering from the result of a cerebral hemorrhage induced by over-exertion while engaged in an occupation designated as hazardous by the Workmen's Compensation Law (Consol. Laws, chap. 67; Laws of 1913, chap. 816; re-enacted by Laws of 1914, chap. 41, as amd. by Laws of 1914, chap. 316).

The State Industrial Commission has found as conclusions of fact that in November, 1914, the claimant was employed as a bottler by the Risedorph Bottling Company, which was engaged in the manufacture of mineral waters at Kinderhook, N. Y.; that while claimant "was working for his employer at his employer's plant, and was assisting another employee in lifting a barrel weighing about 200 lbs. for the purpose of tiering for storage in the cooler, he was seized with a stroke of apoplexy by reason of the strain occasioned by the lifting of the heavy barrel. By reason of this apoplexy, that portion of the brain in which the apoplexy was seated became degenerated, and while Fowler gradually recovered from the motor paralysis of the left side which immediately followed the apoplexy, there remained a deterioration of his mental faculties due to the above-mentioned degeneration, by reason of which apoplexy and degeneration Fowler was disabled from working from the date of the accident to the date hereof, and is still disabled. * * * The injuries to Clinton D. Fowler were accidental injuries, and arose out of and in the course of his employment. * * * This claim comes within the provisions of chapter 67 of the Consolidated Laws."

There was much testimony given before the Commission by medical experts as to the cause of claimant's enfeebled condition. The experts called by the insurance carrier ascribed it to cerebral thrombosis, resulting from arterial sclerosis. The experts called by the claimant supported the theory that such condition resulted from embolism, and one of them testified that he found no evidence of arterial sclerosis. However, it is not for us to determine which theory seems to be better supported by the facts. The Commission has done that, and its decision, which finds justification in the evidence, is binding upon us.

As the appellants' counsel state in their brief the case must be viewed as one of cerebral hemorrhage. So considered, I think, the award made by the Commission was fully warranted. The Workmen's Compensation Law does not require that the nature of the injury shall be such as to present a visible or external sign. The act simply says (§ 2): "Compen-

sation provided for in this chapter shall be payable for injuries sustained or death incurred by employees engaged in the following hazardous employments." It may well be doubted whether the beneficent purposes of the law, which have repeatedly been the subject of consideration by both the Court of Appeals and this court, would be fully subserved if its application were limited to accidents of which there appeared an external or visible sign. No good reason for such limitation is apparent. Certainly the statute has not seen fit to prescribe it, and it is not for this court to write it into the law.

Appellant's main contention is that claimant's condition was the natural progress and result of disease, and not of accidental personal injury arising out of his employment. This contention was disposed of by the decision of the State Industrial Commission made upon conflicting testimony mainly of medical experts. That the cerebral hemorrhage, if resulting from strain in lifting while the claimant was engaged in his usual employment, constituted an accidental injury within the meaning of the Workmen's Compensation Law is denied by the appellants who, in their carefully prepared brief, cite many cases in support of their contention. These cases in effect hold that where the death of the employee occurs from heart failure or from inherent internal weakness or disease while the employee is doing his ordinary work in the ordinary way and not as the result of sudden or extra exertion, his death cannot be said to be accidental. In one of the cases cited (*Barnabas* v. *Bersham Colliery Co.*, 103 L. T. [N. S.] 513) it was held that a stroke of apoplexy which may or may not have been brought on by a strain or over-exertion, is not an injury suffered by accident where there is no evidence that the work subjected the workman to any serious strain.

In the case at bar there was testimony that the claimant, who was fifty-two years old, and for twenty-two years had been in the service of the defendant employer, had always been in good health, and in fact had never up to the time of sustaining the apoplectic stroke been attended by a physician. Of the occurrence itself the claimant testifies that while raising the barrel he felt a sensation, "I had a dizzy head. It came on me suddenly." His brother, who was assisting claim-

ant in raising the barrel, testified that he saw the claimant put his hand to his head and leave the cooler; that he stood outside holding his head and rubbing it; that the brother asked the claimant if he had a pain or headache, to which the claimant answered: "I have a terrible pain, never had anything like it before;" that the claimant then sat down upon a box, but when he tried to get up, slipped and sank down upon the floor. The evidence was that the barrels were usually piled only two tiers high, and that the claimant was at the time of the occurrence assisting in doing the unusual work of piling this barrel three tiers high. Claimant's attending physician testified that the injury was "rupture of cerebral artery on right side producing clot of blood on brain and causing complete paralysis on left side," and that the disability was likely to exist permanently.

The Workmen's Compensation Law (§§ 3, 10) requires that the injury, in order to entitle the claimant to compensation, must have been an accidental injury arising out of and in the course of employment. An "accident" has been most commonly defined as "an unlooked for mishap or an untoward event which is not expected nor designed." (Connor Workmen's Compensation, 8, 9.) "Accidental" has been defined by the United States Supreme Court as "happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected." (*Mutual Accident Assn.* v. *Barry*, 131 U. S. 100, 121; *Matter of Moore* v. *Lehigh Valley R. R. Co.*, 169 App. Div. 177, 181.)

The following English cases support the decision of the State Industrial Commission in this case. As the British Workmen's Compensation Act of 1906 (6 Edw. VII, chap. 58), which to a large extent formed the basis of our statute, provides (§ 1) for compensation for personal injury to a workman caused by accident arising out of and in the course of the employment, the English decisions are entitled to careful consideration in arriving at a proper construction of our Workmen's Compensation Law. (*Matter of De Filippis* v. *Falkenberg*, 170 App. Div. 153.)

In the case of *Fenton* v. *J. Thorley & Co.* (5 W. C. C. 1; 19 T. L. R. 684, House of Lords) it was held that a physiological injury caused by an unlooked-for mishap or an untoward

event which is not expected or designed is an injury by accident. In this case the claimant and a fellow-workman set to work to move a wheel of a machine which the claimant was operating. Suddenly the claimant felt something which he described as a " tear " in his " inside," and it was found that he was ruptured. In deciding this case Lord MAC-NAGHTEN said: "If a man, in lifting a weight or trying to move something not easily moved, were to strain a muscle, or rick his back, or rupture himself, the mishap in ordinary parlance would be described as an accident. Anybody would say that the man had met with an accident in lifting a weight, or trying to move something too heavy for him. * * * A man injures himself suddenly and unexpectedly by throwing all his might and all his strength and all his energy into his work by doing his very best and utmost for his employer, not sparing himself or taking thought of what may come upon him, and then he is to be told that his case is outside the Act because he exerted himself deliberately, and there was an entire lack of the fortuitous element. I cannot think that this is right."

In the case of *Clover, Clayton & Co.* v. *Hughes* (3 B. W. C. C. 275) a workman suffering from an advanced aneurism of the aorta was doing his work in the ordinary way by tightening a nut with a spanner. This ordinary strain caused a rupture of the aneurism, resulting in death. The House of Lords held that there was evidence upon which the county judge was justified in making the award. In his opinion Lord LOREBURN said: "No doubt the ordinary accident is associated with something external * * *. I think it may also be something going wrong within the human frame itself, such as the straining of a muscle or the breaking of a blood vessel. If that occurred when he was lifting a weight it would be properly described as an accident * * *. The man 'broke a part of his body' to borrow Lord ROBERTSON'S expression in *Brintons* v. *Turvey*." *

In the case of *McArdle* v. *Swansea Harbour Trust* (8 B. W. C. C. 489; 11 N. C. C. A. 175, June, 1915), a workman fifty

---

* L. R. [1905] A. C. 290.—[REP.

years of age, who had been employed in the respondent's tin sheds for ten years, whose work was to move tin plates in cases, and who during the forenoon had been employed with other men in shifting heavy cases, while moving lighter cases in the afternoon, fell backwards and died almost immediately. A *post mortem* examination established the cause of death as rupture of an aneurism of the aorta. The county judge found that death was the result of long-standing heart disease which reached its ordinary and fatal result while he was doing the lightest part of an ordinary day's work and held that there had not been an " accident " within the meaning of the act.

The Court of Appeal in allowing the appeal and sending the case back to the county judge to make an award held that it was a misdirection to consider whether the rupture occurred when the deceased was or was not doing work of a light nature, and that an accident should have been found as soon as it was ascertained that the rupture occurred by reason of the strain at work, however slight that strain may have been. In the opinions of the court both Lord COZENS-HARDY, M. R., and PICKFORD, L. J., comment upon the two cases above cited as expressing the law of England.

At this point it may not be amiss to refer to the case of *McCahill* v. *N. Y. Transportation Co.* (201 N. Y. 221), a negligence action, in which it was held that the acceleration of death causes death according to both the civil and the criminal law and hence that liability exists for hastening the death of a person in a diseased condition even though the disease would probably have caused death at a later time without defendant's agency.

Returning to the English cases. It was held by the Court of Appeal in *Doughton* v. *A. Hickman, Ltd.* (6 B. W. C. C. 77) that a workman who was suffering from a weak heart and whose duty it was to load heavy sacks on a truck and then with the help of another to push the trucks along the rails, and who shortly after pushing an empty truck and while he was having a rest, fell senseless and died soon afterwards, suffered death by accident, the medical evidence proving that the heart would not have failed had it not been subjected to more than ordinary strain.

It was held by the Court of Appeal in *Broforst* v. *S. S. "Blomfield"* (6 B. W. C. C. 613) that a fireman who after having been some time at work shoveling coal, and raking fires in the stokehold of a steamship, had an apoplectic stroke, was entitled to an award although he was in such a diseased condition that a stroke would be likely to be brought on by such exertion. The court places its decision upon the case of *Clover, Clayton & Co., Ltd.,* v. *Hughes (supra).*

It was held in *Brown* v. *Kemp* (6 B. W. C. C. 725) that a brewer's assistant who felt a severe internal strain and became faint and sick while lifting a heavy cask, and later found that he had ruptured himself, was injured by accident although he had suffered a rupture in the same place twenty-two years before for which he had worn a truss up to within the last five or six years, when he found he could do his work without it. The County Court had held that although there was an injury by accident, it did not arise out of the employment as it was the result of gradual weakening and not of any unusual strain. The Court of Appeal held that there was a misdirection. Accident having been found, the evidence proved that it arose out of the employment, and remitted the case to the County Court to fix the compensation.

It was held in *Aitken* v. *Finlayson, Bousfield & Co. Ltd.* (7 B. W. C. C. 918; 51 Sc. L. R. 653 [Court of Session, Scotland]) that a workman employed as a gateman at a flax mill whose duty it was to attend to the gate, telephone and ambulance appliances, and personally to minor accidents, who being informed of a scaffold accident to some workmen not in the employment of the mill owners, but engaged in doing work for them on the premises, ran from the gate to the scene of the accident and back to the gate in order to telephone for a doctor and an ambulance, and who while telephoning was seized with an apoplectic fit from which he died, was entitled to an award of compensation upon the ground that his death was due to apoplexy brought on by the exertion of running as quickly as he could and the excitement caused by the scaffold accident, and hence that his death was due to an accident arising out of and in the course of the employment.

We do not understand it to be seriously questioned that the

injury to claimant arose out of and in the course of his employment. In *Matter of Fisher* (220 Mass. 581), where a workman subject to affection of the valves of the heart and who earlier in the day had been engaged in heavy lifting, and in carrying two buckets of water at a time up a slight incline so that his heart muscle was tired and exhausted, suddenly fell to the ground after lifting a bag of coal weighing one hundred and fifty pounds, and died of heart disease after about five minutes of unconsciousness, and where at the hearing before an arbitration committee a medical examiner testified that the employee died from debilitation of the heart caused by the abrupt lifting of the load, it was held that a finding was warranted that the injury that caused the workmen's death arose out of and in the course of his employment.

We conclude that in the case at bar the claimant having been an employee engaged in a hazardous employment and having suffered a cerebral hemorrhage as the result of unusual strain or exertion while prosecuting such employment, suffered an accidental injury within the intent and meaning of the Workmen's Compensation Law and that the same arose out of and in the course of his employment and that he is entitled to be awarded the compensation established by that act.

The award of the State Industrial Commission should be affirmed.

Award unanimously affirmed.