[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 415 
Certiorari to review and annul an award of five thousand dollars to the wife and two minor children of Howard Johnson, deceased, an employee of the Western Pacific Railroad Company. The facts of the case upon which the award is rested succinctly stated are these:
Howard Johnson, employed as collector and messenger by the Western Pacific Railroad Company, petitioner herein, was, on the twenty-first day of December, 1921, while riding on an unlighted bicycle from his home to the place of his employment, struck by an automobile and fatally injured. Two days later he died. About 5 o'clock on the day of the accident the deceased left the office of the petitioner on a bicycle to take a bill of lading for signing to the firm of Morgan Miller located on the waterfront of the city of Stockton. When the deceased left the office the weather was threatening and one-half hour later before he could return to the office a heavy rainstorm broke. Instead of returning directly to the office, which was six blocks away, the deceased went out of his way four blocks to his home, where he procured his raincoat. On his way to his home he purchased some meat which he took home to his wife and as he was leaving the house he told her that he would be detained that evening at his work. He was returning to the office when he was struck by the automobile and sustained the injuries which resulted in his death.
The award of the Commission is predicated upon the finding that the controlling purpose of Johnson in making the detour to his home was to procure his raincoat or "slicker" in order to protect himself from the inclemency of the weather in the discharge of his duties. The petitioner contends that there is no substantial evidence in the record *Page 417 
supporting this finding of the Commission but that, on the contrary, the evidence shows that his controlling purpose was to bring meat home to his wife and tell her that he would be detained.
[1] It is a well-recognized rule that the findings of the Industrial Accident Commission upon questions of fact are conclusive and are not subject to review where there is any substantial evidence to support them. (Massachusetts etc. Co.
v. Industrial Acc. Com., 176 Cal. 488 [168 P. 1050]; SouthernPac. Co. v. Industrial Acc. Com., 177 Cal. 378 [170 P. 822];Western Indemnity Co. v. Industrial Acc. Com., 182 Cal. 709, 720 [190 P. 27].) That is to say, the Commission is the final arbiter where there is a conflict in the evidence or where opposing inferences may reasonably be drawn. (Tartar v.Industrial Acc. Com., 191 Cal. 703 [218 P. 39]; Clapp'sParking Station v. Industrial Acc. Com., 51 Cal.App. 624, 627 [197 P. 369].) [2] It is the rule that where from the evidence two opposing inferences may be drawn, that inference which is accepted by the Commission must be sustained if there is evidence in the record to support it and if it is a reasonable inference to be drawn from that evidence. (Eastman
v. Industrial Acc. Com., 186 Cal. 587, 598 [200 P. 17]; PolarIce etc. Co. v. Mulray, 67 Ind. App. 270 [119 N.E. 149].) [3] While there is evidence in the instant case from which the inference might be drawn that the primary purpose of the deceased in stopping at his home on his way back to the office was to take the meat home to his wife, or to notify her that he would be delayed, there is ample evidence from which the inference may be reasonably deduced that his primary and impelling purpose was to procure his "slicker."
It may be conceded that there is no direct evidence in the record as to what decedent's purpose was in going home. That purpose, however, can be inferred from the surrounding circumstances and from the conduct and conversation of the decedent on the evening in question. It cannot be denied that there is in the record sufficient evidence to show or tending to show that the deceased did obtain his raincoat at home. Thus it appears in the evidence that he was not wearing either his raincoat or his overcoat when he left the office and was wearing his raincoat when he was picked up at the time of the accident. It is not disputed that at *Page 418 
the time the decedent left the office of the Railroad Company to go to the waterfront to have the bill of lading signed that there was a slight drizzle and that about a half an hour later, or about the time he was returning to the office, a heavy rainstorm broke suddenly. The raincoat of the decedent was not the ordinary cravenette raincoat but was the kind commonly known as a "slicker." It had been purchased by the decedent a couple of weeks before and ordinarily he kept it hanging on the back porch of his home. When he was leaving his home that evening with the raincoat on he remarked with reference to the weather that it was "a hell of a night to be out in." It is not unreasonable to infer that being suddenly caught in a rainstorm the first thought of the decedent was to proceed to his home, only four blocks distant, and procure his slicker to protect him from the weather. This, we think, is fairly inferable despite the fact that the office was only six blocks away. Although his normal quitting time was supposed to be 5 o'clock, he worked overtime so frequently that it was the rule rather than the exception for him to be detained at the office. Mr. Harkins, the superior officer of the decedent, testified that for some time prior to the time of the accident the decedent was working overtime nearly every day. There is also evidence that the decedent would not know until he returned to the office whether or not there was more work for him to do.
This is sufficient evidence, we think, to support the finding of the Commission that his main purpose in going home was to procure his raincoat. The contrary inference, contended for by the petitioner, that he went home to bring the meat and tell his wife that he would be detained at his work finds support only in the fact that he did bring the meat home and that he did tell his wife that he would be detained. Even so his main purpose on the occasion in question might well have been to get his raincoat. There is no evidence that the deceased habitually and regularly purchased supplies for his family and returned to his work after taking them home. To the contrary there is evidence in the record that it was not the habit of the deceased to bring the meat directly home after purchasing it and that oftentimes he would take it back to the office. The incident of the meat getting is, therefore, not opposed to the inference that the *Page 419 
primary purpose of the decedent was to get his raincoat and that the purchasing and taking of the meat home was on this particular occasion but a mere incidental purpose.
The testimony of the wife is to the effect that the decedent had come into the house; had left the meat on the table in the kitchen and was outside of the house and leaving without saying anything to her when she called to him and asked him in effect what the rush was. He said something about "Sperry's" which she did not distinctly understand because of the noise of the rain but she did understand him to say that he was in a hurry and not to get supper until after 6 o'clock as he would be late. This testimony necessarily negatives the inference that his primary purpose in going home was to tell his wife that he would be detained. Otherwise he would have located his wife before leaving the house or at least have left word with his daughter, who was practicing upon the piano in the front room.
[4] Certainly the injury in the instant case "arose out of" the employment. The nature of the accident was one to which the decedent was particularly susceptible by reason of the nature of his employment which required his presence on the public highways. That is to say, the employment being one in which the employee was required to travel from place to place at the will of the employer, the risks of such travel were distinctly incident to the employment itself. (Globe Ind. Co. v.Industrial Acc. Com., 36 Cal.App. 280, 283 [171 P. 1088];London etc. Co. v. Industrial Acc. Com., 35 Cal.App. 681, 682 [170 P. 1074].)
[5] He was at the time of the accident "in the course of" his employment. His duties as a collector and messenger were such as to require him to be out of doors most of his time regardless of the condition of the weather. In order to do his work efficiently and well it was necessary for him to be properly protected from inclement weather. It was, therefore, we think, a reasonable act for the deceased, a heavy downpour having commenced after he left the office, to proceed to his home, which was two blocks nearer than the office, in order to procure his "slicker," which was particularly adapted for use in wet weather. This is particularly true in view of the fact that he would not know until he had returned to the office whether there would be other errands for him to perform for his employer. *Page 420 
[6] Furthermore, it is to be reasonably anticipated that a person whose duties require him to be out of doors will seek protection from rain. In so seeking protection an employee is not to be held as a matter of law as deviating from the course of his employment. [7] If, in the instant case, the decedent had sought shelter in a near-by store or under a friendly porch, the Commission would not be compelled to find, we think, that, while waiting for the rain to abate, the employee was outside of the course of his employment. (Chiulla De Luca v.Board of Park Commr., 94 Conn. 7 [107 A. 611]; State RoadCommr. v. Industrial Acc. Com. of Utah, 56 Utah, 252 [190 P. 544]; Moore v. Lehigh Valley R. Co., 169 App. Div. 177 [154 N Y Supp. 620].) The procuring of his raincoat was but another means of seeking shelter. In going home for his raincoat in order that he might continue his duties, instead of seeking shelter under a roof, he was facilitating his work, and it cannot be said, contrary to the finding of the Commission, that by so doing he had departed from the course of his employment.
[8] The fact that the decedent at the time of the injury was riding upon an unlighted bicycle in violation of section 13 of the Motor Vehicle Act of the state of California (Stats. 1915, p. 397] does not operate to deprive his dependents of the compensation to which they are entitled by reason of his death. The Workmen's Compensation Act now contains no provisions forfeiting the right of a dependent to compensation because of the violation of law on the part of the decedent contributing to his injury. The violation of an ordinance is ordinarily negligence per se which operates as a defense to an action for damages based upon negligence but in a proceeding under the Workmen's Compensation Act the element of negligence has by law been wholly eliminated. Section 21 of article XX of the state constitution provides that the liability of the employer for workmen's compensation shall be "without regard to the fault of either party." The whole theory of the Workmen's Compensation Act is to provide compensation for an injured employee during his incapacity and for his dependents in case of his death regardless of whether such employee had or had not been negligent. As was said in Union Iron Works v. Industrial Acc.Com., 190 Cal. 33 [210 P. 410], "The proceeding *Page 421 
before the Commission . . . is founded upon the provisions of the Workmen's Compensation Act from which the theory of faultis wholly eliminated."
[9] The fact that the employee was riding upon an unlighted bicycle did not, as counsel for the petitioner contend, operate to take the employee "out of the course of" his employment upon the theory that the employee had incurred an added risk not contemplated by the nature of his employment. The fact that he was riding upon an unlighted bicycle constitutes negligence in the course of his employment rather than a circumstance which takes him outside of the course of his employment. It is a matter of common knowledge born of human experience that employees are sometimes negligent and the negligence of an employee must, therefore, be included as one of the risks of any employment. [10] The fact that an employee is guilty of ordinary negligence in any given case cannot be said, therefore, to impose a risk and responsibility upon an employer not incidental to the employment. It is not the law of this state that the performance of an authorized duty in a negligent manner will by itself take an employee outside of the course of his employment. Such a defense would be tantamount to a defense of contributory negligence expressly abolished in workmen's compensation cases. The conduct of an employee, of course, may be such as to remove him from the sphere of his employment. Particularly is this so when an employee undertakes to do an act not authorized by the duties of his employment, or places himself in a locality to which his duties do not require him to go. In such cases the "added peril" doctrine adds nothing to the general meaning of the term "in the course of the employment." The act of the deceased, however, in riding without a light on his bicycle even if it were shown in the instant case to have been the result of negligence, was negligence of a character which might be anticipated from the nature of the employment which necessitated the use of a bicycle — oftentimes after dark. The very nature of the employment and the method of executing the duties of the employment in the instant case compel the conclusion that there would be times when the employee would be negligent in the operation of the instrumentality used to execute the duties of the employment. *Page 422 
[11] Assuming that the decedent willfully and deliberately started on his journey to the office without lighting the lamp of his bicycle, this at the most was not more than willful misconduct in the course of his employment. Willful misconduct is not a defense to a claim for compensation if the injury occurring by reason of the misconduct of the employee resulted in his death. (Workmen's Compensation Act as amended in 1919 [Stats. 1919, p. 910, sec. 6, subd. a-4].)
The award of the Industrial Accident Commission is affirmed.
Myers, J., Lawlor, J., Waste, J., and Seawell, J., concurred.
Mr. Justice Richards being disqualified did not participate in the foregoing.
Rehearing denied.
All the Justices concurred.