NORTHWESTERN IRON COMPANY, Appellant, vs. INDUSTRIAL
COMMISSION and another, Respondents.

*April 13—May 4, 1915.*

*Workmen's compensation: Injury to employee while warming him-
self: Negligence.*

1. The duties of an employee were to dump tram cars containing
   briquettes of iron ore as they came from kilns, pick up bri-
   quettes which had fallen, and transfer the cars to the return
   track.   In the intervals between the comings of cars he had

some leisure time which he was expected to pass as best he could. On a cold night, after a car came out, he sat or lay down on the track in front of it to warm himself from the hot briquettes, and was caught and injured by the next car. *Held*, that at the time of the accident he was "performing service growing out of and incidental to his employment," within the meaning of sub. (2), sec. 2394—3, Stats. 1913.

2. Negligence of the employee in such a case does not deprive him of the right to compensation.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

Action under sec. 2394—19, Stats., to set aside an award of the *Industrial Commission* in favor of the defendant *Kretkovich* for personal injuries suffered by him February 15, 1914, while in the employ of the plaintiff. The plaintiff claims that the *Commission* acted in excess of its powers because the evidence showed that at the time the accident occurred the claimant was not performing services growing out of and incidental to his employment. The order of the *Commission* was affirmed by the circuit court, and from that judgment the plaintiff appeals.

The defendant has an iron-briquetting plant at Mayville. The briquettes pass through kilns and are then placed on small dump cars which run unattended on iron tracks out into the yard about 200 feet, and are there dumped by employees and placed upon a transfer track for return to the kilns. A car comes out about every fifteen minutes. On the night of the accident the claimant, *Kretkovich,* and one Vignovich were doing this work on separate tracks, the former on No. 2 track and the latter on No. 4 track. Briquettes drop from the cars in their progress and the dumpers are required to pick them up. Between the cars the men have about five minutes leisure time on the average. The night was cold. The men started to work that night at 6 o'clock. The accident happened at about half-past 10. Both the claimant and Vignovich testified through an interpreter and

their testimony is not easy to understand. The purport of the claimant's story is that he had blocked a car at the end of its run and was picking up briquettes which had fallen from it, when another car came unexpectedly and caught him between the two cars. Vignovich testified that a car came out on No. 2 track and he and claimant blocked it and sat down in front of it to get warm, the briquettes being hot and the night cold; that after a few minutes he went over to No. 4 track, some twenty-five feet distant, and left *Kretkovich* lying on the track in front of the car; that eight or ten minutes afterward he heard *Kretkovich* holler and went over and found him between the tracks, caught between the two cars; that he didn't know that *Kretkovich* got hurt until he hollered.

The *Commission* did not determine which story was correct, but held that in either case the company was liable for compensation, because in either case the claimant was in a legal sense performing services growing out of and incidental to his employment.

*Edward G. Wilmer*, for the appellant, contended, *inter alia*, that although mere negligence of the employee as such does not relieve the employer of liability for compensation, an employee may carelessly and negligently subject himself to hazards entirely foreign to his employment and have no right to compensation because his injury did not arise or grow out of his employment, because it did not follow an accident within the meaning of the law. Boyd, Workm. Comp. § 474; 1 Bradbury, Workm. Comp. (2d ed.) 398; *Kunza v. C. & N. W. R. Co.* 140 Wis. 440, 123 N. W. 403; *McNicol's Case*, 215 Mass. 497, 102 N. E. 697; *Williams v. Wigan C. & I. Co.* 3 Butterworth's Workm. C. C. 65; *Thomson v. Flemington C. Co.* 48 Scot. Law Rep. 740, 4 Butterworth's .Workm. C. C. 406; *Brice v. Edward Lloyd, Ltd.* [1909] 2 K. B. 804, 127 L. T. Jour. 322, 2 Butterworth's Workm. C. C. 26; *Gane v. Norton H. C. Co.* [1909] 2 K. B. 539, 100 Law Times, 979, 2 Butterworth's Workm. C. C. 42.

For the respondent *Industrial Commission* there was a brief by the *Attorney General* and *Winfield W. Gilman,* assistant attorney general, and oral argument by *Mr. Gilman.* They cited, among other cases, *Charron v. Northwestern F. Co.* 149 Wis. 240, 134 N. W. 1048; *Hackett v. Wis. Cent. R. Co.* 141 Wis. 464, 124 N. W. 1018; *Kunza v. C. & N. W. R. Co.* 140 Wis. 440, 123 N. W. 403; *Houston, E. & W. T. R. Co. v. McHale,* 47 Tex. Civ. App. 360, 105 S. W. 1149; *Jacobson v. Merrill & R. M. Co.* 107 Minn. 74, 119 N. W. 510, 22 L. R. A. N. s. 309; *Chambers v. Woodbury Mfg. Co.* 106 Md. 496, 68 Atl. 290, 14 L. R. A. N. s. 383; *Pittsburg V. P. & B. B. Co. v. Fisher,* 79 Kan. 576, 100 Pac. 507; *Mullery v. Missouri & K. T. Co.* (Mo.) 168 S. W. 213; Dawbarn, Emp. Liab. & Workm. Comp. (4th ed.) 109; *Milwaukee v. Althoff,* 156 Wis. 68, 145 N. W. 238; Dawbarn, Workm. Comp. App. (1912–13) 28; *Parkinson S. Co. v. Riley,* 50 Kan. 401, 31 Pac. 1090, 34 Am. St. Rep. 123; *Bertha Z. Co. v. Martin's Adm'r,* 93 Va. 791, 22 S. E. 869, 70 L. R. A. 999; *Edmunds v. Peterson,* 28 T. L. Rep. 18, 5 Butterworth's Workm. C. C. 157; *Henderson v. Glasgow,* 37 Scot. Law Rep. 857, 8 Scot. L. T. 118; *Sheehy v. G. S. & W. R. Co.* 47 Irish L. T. 161, 6 Butterworth's Workm. C. C. 927.

Winslow, C. J.    The claimant's duties were to dump the tram car when it came out, pick up the fallen briquettes, transfer the car to the return track, and wait for another car. Apparently he had intervals of rest when he was expected to pass the time as best he could, although exposed to the weather on a cold night.    If we credit the claimant's own story, there is no question about his right to compensation, because he was picking up briquettes at the time the second car came from the kiln and struck him.

The *Commission,* however, did not decide whether the claimant or Vignovich told the truth, but held that in either case compensation must be paid, hence we must consider the case on the assumption that the story told by Vignovich is

true.   This story is in effect that, the night being cold, they
blocked a car as it came out and sat down on the track in
front of it to get warm from the heat of the briquettes, which
were just out of the kiln; that in a few minutes he left claim-
ant lying on the track in front of the car and went over to his
own track twenty-five feet away, and some minutes later
heard claimant holler and came over and found him caught
between the cars.   The only reasonable inference from this
testimony seems to be that the claimant, instead of at once
proceeding to pick up the fallen briquettes, dump the car, and
thus prepare to receive the next car, blocked the car and pro-
ceeded to sit down or lie down in front of it in order to get
warm, and was there caught by the next car either while he
was engaged in getting warm or while he was picking up
briquettes after he had got warm.· This would be good
ground upon which to find the claimant negligent, but negli-
gence does not prevent compensation.

Clearly this testimony does not show that the injury was
intentionally self-inflicted; hence the only question is, Does
it show that at the time of the accident the claimant was not
performing service growing out of and incidental to his em-
ployment?   We think not.

The man's duties involved periods of leisure during which
apparently he was expected to kill time as best he might,
with no specific direction as to what he should do or where
he should wait.   The night was cold and he put off dumping
the car until he could warm himself from its heated contents.
To say that in so doing he had left the master's employment,
was pursuing his own private purposes, and doing something
foreign to the work he was employed to do, is illogical to a
degree.   To protect himself from undue and unnecessary ex-
posure to the cold was a duty he owed his master as well as
himself, and it does not follow that he left his master's em-
ployment because he negligently allowed the second. car to
run into him while he was warming himself.

*By the Court.*—Judgment affirmed.