## No. 9510.

### OCEAN ACCIDENT & GUARANTEE CORPORATION *v*. PALLERO ET AL.

1. WORKMAN'S COMPENSATION ACT—*Where employee is performing service in the course of his employment.* Deceased was a watchman at a mine located more than 10,000 feet above sea level. He was furnished a cabin, at the premises, for a residence, but was required to procure his own fuel. The stumps of resin-bearing trees, near the cabin, afforded the nearest and best source of a supply of fuel, and deceased was accustomed to procure his supply by blasting the stumps with dynamite. While so engaged he was killed by a flying piece of wood. *Held* he was performing service in the course of his employment, within the meaning of the statute.
2. —— *Negligence of Employee,* contributing to the injury does not bar him from relief.

*Error to Clear Creek District Court, Hon. Harry S. Class, Judge.*

Mr. CHAS. W. O'DONNELL, for plaintiffs in error.

Mr. J. W. B. SMITH, for defendants in error.

Opinion by Mr. Justice Allen:

THIS action is one which arose from proceedings brought before the Industrial Commission of Colorado upon the claim of one Mary Pallaro for compensation under the Workmen's Compensation Act of Colorado. The claim was made and filed on behalf of the dependents, being the widow and the children, of one Fred Pallaro, who had been killed, as the result of an accident, while in the employ of The Broderick Mining & Milling Company. Upon a hearing, in this matter, the Industrial Commission made its findings and award, and granted compensation to the claimants. Thereafter an action was commenced in the District Court of Clear Creek County by the above named Company, which had been the employer of the deceased workman, and The Ocean Accident & Guarantee Corporation, Limited, the insurance carrier for the Broderick Company, to vacate the findings and award of the Commission on the ground that the same is unlawful. The District Court confirmed the findings and award of the Industrial Commission. The employer and the insurer, above named, bring the cause here for review.

The main question to be determined by this court upon this review is, whether or not the admitted facts in the instant case, showing the circumstances under which Fred Pallaro met his death, are such that it should be held, as a conclusion of law, and as the Industrial Commission found, that he "was killed by an accident arising out of and in the course of his employment." The materiality of this question arises from the provisions of section 8, Chapter 179, p. 522, Laws of 1915, as amended by section 4, Chapter 155, Laws of 1917, which reads as follows:

"The right of the compensation provided for in this act, in lieu of any other liability whatsoever, to any and all per-

sons whomsoever, for any personal injury or death accidentally sustained on and after August 1st, 1915, shall obtain in all cases where the following conditions occur:

(1)    Where, at the time of the accident, both employer and employe are subject to the provisions of this act; and where the employer has complied with the provisions thereof regarding insurance.

(2)    Where, at the time of the accident, the employe is performing service arising out of and in the course of his employment.

(3)    Where the injury is proximately caused by accident arising out of and in the course of his employment, and is not intentionally self-inflicted."

The contention of the plaintiffs in error is, in effect, that under the undisputed facts in the case, it cannot be said, as a matter of law, that, at the time of the accident, Pallaro was performing service arising out of and in the course of his employment, or that the accident was one so arising.

At and prior to the time of the accident which caused his death, Fred Pallaro was employed by The Broderick Mining & Milling Company as a watchman on its premises at the Lamertine Mine in Clear Creek County. As such watchman, it was his duty to reside on the premises, and to stay thereon during all hours of the day. The Company furnished for his use a cabin, equipped with bedding and a cooking stove. Neither coal nor any other fuel, either for heating or cooking purposes, was supplied by the Company, and it was necessary for Pallero to obtain his own fuel. The immediate surroundings of the cabin furnished no loose wood, in the shape of logs or limbs, that could be used to heat the cabin or cook his food. The premises were situated at an altitude of 10,500 feet above sea level. It was undoubtedly necessary for Pallero to be supplied with fuel at all times. The only loose timber available was some six or seven hundred yards from the Company's premises, and to secure that would require Pallaro to absent himself from the property which he was required to guard continuously. The ground on the premises was cov-

ered by spruce or pine stumps, composed of solid matter, and constituting good fuel. Pallaro was blasting some of these stumps with dynamite for the purpose of securing his fuel, at the time he met with the accident causing his death. The accident resulted from the use of the explosives, Pallaro being struck upon the head by a piece of flying wood.

In view of the foregoing facts and circumstances, it cannot be reasonably doubted, in the instant case, that procuring fuel in order to protect himself from cold, or for cooking purposes, was an incident of Pallaro's employment. The act of procuring fuel was ultimately for the benefit of the employer. In the language of the opinion in *Northwestern Iron Co. v. Industrial Comm.*, 160 Wis. 637, 152 N. W. 416, "to protect himself from undue and unnecessary exposure to the cold was a duty he owed his master as well as himself." Procuring fuel was, under the existing circumstances, arising out of and in the course of the employment. Compensation cannot be defeated by the mere fact that Pallaro was killed while procuring fuel. In this connection, the law is as stated in 1 Honnold on Workmen's Compensation, p. 381, sec. 111, as follows:

"Acts of ministration by a servant to himself, such as quenching his thirst, relieving his hunger, protecting himself from excessive cold, performance of which while at work are reasonably necessary to his health and comfort, are incidents to his employment and acts of service therein within the Workmen's Compensation Acts, though they are only indirectly conducive to the purpose of the employment. Consequently no break in the employment is caused by the mere fact that the workman is ministering to his personal comforts or necessities, as by warming himself, or seeking shelter, or by leaving his work to relieve nature, or to procure a drink, refreshments, food, or fresh air, or to rest in the shade."

The author cites numerous sustaining cases. The foregoing extract is approvingly quoted in *Haller v. City of Lansing*, 195 Mich. 753, 162 N. W. 335, 337.

It only remains to be seen, whether or not there were any circumstances, surrounding the accident, which precludes the operation of the rule announced in the above quotation from Honnold, or which require us to hold that the accident did not arise "in the course of the employment."

Assuming, without conceding or deciding, that Pallaro was guilty of negligence in using explosives instead of employing some other means of obtaining loose pieces of wood from stumps, such negligence does not defeat a recovery of compensation. Section 8 of the Act, hereinbefore quoted, enumerates the conditions which must occur and exist in order to give the right to compensation, and freedom from negligence, on the part of the employee, is not included. Negligence is, therefore, no defense. Neither does negligence, in itself, prevent any act, ordinarily incident to the employment, from being one performed out of and in the course of the employment. In 1 Honnold on Workmen's Compensation, p. 388, sec. 112, the author says: "A peril which arises from the negligent or reckless manner in which he does the work which he is employed to do may well, and in most cases rightly, be held to be a risk incidental to the employment."

The grounds upon which compensation has been denied, in cases of this kind, are referred to in *Haller v. City of Lansing, supra,* where the court said:

"From an examination of cases   *   *   *   in which it has been held that an employe injured on the premises of his employer during the noon hour or other temporary suspension of work was not under the act, we think it manifest that the controlling reason for denying an award in those cases rests upon the proven facts that the employe broke the so-called nexus between workman and employer by some manifestly reckless and unreasonable hazard, amounting to intentional and willful misconduct, or by disregarding, or disobeying, some warning of danger at the place of injury or prohibition relating to the thing being

done, either addressed to the workman or promulgated as a general rule of conduct while on the premises."

Assuming, without holding, that compensation should be denied upon any of the foregoing grounds, we find none of them existing in the instant case. The record shows that it is the custom of miners and guards, situated in such circumstances as was Pallaro, to use dynamite for the purpose of blasting out stumps for fuel. It cannot, therefore, be claimed that Pallaro, by the use of the explosives, was manifestly reckless or exposed himself to an unreasonable hazard. It appears also to be admitted that the blasted stumps constitute the best and cheapest fuel that may be secured for heating or cooking purposes, at the premises of the Company, taking into consideration the high altitude and the fact that the mountain, in the vicinity of the mine, has been denuded of allen timber, and nothing but stumps remain upon the premises. Pallaro had no instructions not to use explosives. Under the circumstances, appearing from all the admitted facts, blasting stumps was a reasonable way in which to secure fuel.

We hold that the accident in question arose out of and in the course of the employment, and that at the time of receiving the fatal injury, Pallaro was performing a service reasonably incident to his employment. The judgment is, therefore, affirmed.

Affirmed.

Decision en banc.