MATTIE L. JACKSON AND JAMES H. JACKSON (DEPENDENTS OF JAMES JACKSON, DECEASED), RESPONDENTS, v. EUCLID-PINE INVESTMENT COMPANY (EMPLOYER), AND EMPLOYERS' LIABILITY ASSURANCE CORPORATION, A CORPORATION (INSURER), APPELLANTS.*—22 S. W. (2d) 849.

St. Louis Court of Appeals. Opinion filed January 7, 1930.

*Corpus Juris-Cyc References: Workmen's Compensation Acts,—CJ, section 54, n. 65, n. 13.

*W. E. Moser* and *J. C. Jaeckel* for appellants.

*Dubinsky, Duggan & Stein* for respondents.

BENNICK, C.—This is an appeal from the judgment of the circuit court of the city of St. Louis, affirming an award made by the Workmen's Compensation Commission. The claim was filed by Mattie L. and James H. Jackson, as the dependents of their son, James Jackson, seventeen years of age, who was killed on December 6, 1927, while in the employ of Euclid-Pine Investment Company. The commission awarded the sum of $150 for funeral expenses, and to each of the claimants the sum of $5 a week for two hundred weeks for death benefit; and in due course the case has reached this court on the joint appeal of the employer, and its insurer, Employers' Liability Assurance Corporation.

The evidence disclosed that the employer was engaged in the operation and maintenance of the Guild Hall Apartments at 4907 West Pine Boulevard, in the city of St. Louis, and that in the rear of the apartment building, and erected as an adjunct to it, was a garage large enough to house forty cars, in which the work of the deceased was done. The deceased was a night employee at the garage, and incidentally the only person on duty throughout the night, with hours from seven in the evening until seven the following morning. His duties required him to serve as general caretaker and night watchman for the garage, to wipe, clean, and wash cars, to deliver cars to patrons, to drive patrons to their homes, to return cars to the garage and park them therein, and to move cars about from place to place inside of the garage.

Shortly before seven o'clock on the morning of December 6, 1927, Wilbur Moore, who performed the same duties in the daytime as did the deceased at night, came to the garage to relieve the de-

ceased, and called his name, but received no answer. He then went out for breakfast and returned in fifteen or twenty minutes, when he found the deceased sprawled out in the back seat of a Chrysler sedan, and barely breathing. Moore at once summoned help, and the deceased was moved out into the alley, where shortly afterwards he was pronounced dead by a physician who had meanwhile arrived upon the scene. Later an autopsy was performed in connection with the coroner's inquest, and the cause of death was found to have been carbon monoxide poisoning.

Moore testified that as soon as he entered the garage, he smelled gas, and that when he found the deceased, he observed that the doors of the car were closed, and that the motor was not running. It appears, however, that he had previously testified at the coroner's inquest, and had also said in a signed statement which he gave to one of the insurer's investigators shortly after the accident, that the motor of the car was running, and that he turned it off upon his discovery of what had occurred. He testified further before the commission that the deceased held a dusting cloth in his hand; that there was a whisk broom on the floor at his feet; that the cloth and broom were articles used by the employees in the cleaning of cars; and that the particular Chrysler sedan in which the deceased was found was one that they were supposed to dust and keep clean.

Reuben Belford, the employer's engineer, was the first person called by Moore upon the discovery of the body of the deceased, and he testified that he smelled a ''terrible'' odor of gas, the kind that is usually found around garages, when he opened the doors of the car. He also stated that Moore had told him at the time that he had previously opened the doors of the car, and had shut off the motor.

Thomas G. Steele, the police officer who was sent to make a report of the accident, testified that the odor of gas which he noticed on the premises was such as is ordinarily found around garages, but that it was in nowise unusual.

On the review of the case before the full commission, John B. Campbell, the owner of the car in which the deceased was found, was put upon the stand as a witness. According to his testimony, he brought the car to the garage between the hours of ten o'clock and midnight on the evening of December 5th, and he himself parked it in his allotted parking space, where it was standing the next morning when he returned to the garage to take it out for the day. Just before bringing the car to the garage, he had put ten gallons of gasoline in the tank, and after he had placed the car in the proper space, he shut off the motor. When he returned to the car the following morning, he found that the motor was not running, although the ignition was on; that the gasoline tank was practically

empty, so that he was obliged to put an additional ten gallons of gasoline into it; and that the motor was warm, with the heat indicator showing a temperature for regular driving speed. He testified further that the heater was probably open in the car; that it had a tendency to throw out an odor when in use; and that when he drove into the garage the night before, he had refused to permit the deceased to park his car, and had expressly ordered him to leave the car alone.

Upon such evidence the commission found that death was due to carbon monoxide poisoning, and was by accident arising out of and in the course of the employment of the deceased; and now appellants urge two of the statutory grounds of review for our consideration, namely, that the evidence, and the legitimate inferences deducible therefrom, do not justify the finding of the commission, and that there is not sufficient competent evidence in the record to warrant the making of the award.

Section 3 of our Act (Laws 1927, p. 492) provides for compensation for the personal injury or death of an employee by accident arising out of and in the course of his employment. Following the great weight of authority, we have held that the phrases ''out of'' and ''in the course of'' the employment are not synonymous, but are independent of each other, though closely related; that the proof of one does not invariably or necessarily establish the other; and that by reason of the inclusion of both elements in the act, it is incumbent upon the claimant to prove them both, since the showing of the one without the other will not be sufficient to authorize the making of an award. [Smith v. Levis-Zukoski Mercantile Co. (Mo. App.), 14 S. W. (2d) 470.]

We have observed from the reported cases that the comprehensive definition of such terms has proved to be a matter of difficulty in every instance in which the giving of a definition has been found necessary. Generally speaking, it might be said that the phrase ''out of'' refers to the origin or cause of the injury, while ''in the course of'' refers to the time, place, and circumstances under which the injury was received. This, however, is but a roughly put distinction, more suitable for the layman than for the lawyer, and obviously too incomplete and unsatisfactory to be the basis for any action, judicial or *quasi*-judicial in character.

In the Smith case, supra, we said that an injury arises ''out of'' the employment when it is reasonably apparent, upon a consideration of all the facts and circumstances, that there was a causal connection between the conditions under which the employee's work was required to be done and the resulting injury; that the injury must be a natural and reasonable incident of the employment, though not foreseen or anticipated; and that it must be a rational consequence of some hazard connected therewith.

Beyond this the authorities also hold that the risk may be either an ordinary or an extraordinary one, so long as it bears a relation to the employment; that it may originate either from or outside of the employment, if the exposure to such risk is peculiar to the employment; that it may arise from the negligent or reckless manner in which the employee himself performs the work he is authorized to do, so long as the act is not wholly beyond and disconnected from his employment; and that it may even be one arising from the act of the employee in the doing of something ancillary to his employment, and essential to his own personal comfort and convenience. Of the scores of cases which may be found in the books declarative of this latter theory of compensation, the citation of but a few of the leading ones will serve the purposes at hand. [Archibald v. Ott, 77 W. Va. 448, 87 S. E. 791; Northwestern Iron Co. v. Industrial Commission, 160 Wis. 633, 152 N. W. 416; Kaletha v. Hall Mercantile Co., 157 Minn. 290, 196 N. W. 261; Giliotti v. Hoffman Catering Co., 246 N. Y. 279, 158 N. E. 621; Ocean Accident & Guaranty Corporation v. Pallaro, 66 Colo. 190, 180 Pac. 95; Zabriskie v. Erie R. Co., 86 N. J. L. 266, 92 Atl. 385; Terlecki v. Strauss, 85 N. J. L. 454, 89 Atl. 1023; Ryerson v. A. E. Bounty Co. (Conn.), 140 Atl. 728; Moore v. Lehigh Valley R. Co., 169 App. Div. 177, 154 N. Y. S. 620; Holland-St. Louis Sugar Co. v. Shraluka, 64 Ind. App. 545, 116 N. E. 330; Larson v. Industrial Accident Commission, 193 Cal. 406, 224 Pac. 744; Western Pacific R. Co. v. Industrial Accident Commission, 193 Cal. 413, 224 Pac. 754.]

In the same connection it has been held that an injury arises "in the course of" the employment when it occurs within the period of the employment, at a place where the employee might reasonably be, and while he is reasonably fulfilling the duties of his employment, or is engaged in the performance of some task incidental thereto. While an injury will not be held to have arisen "in the course of" the employment if at the time of the injury the employee is engaged in a voluntary act not known to or accepted by his employer, and clearly outside of the duties for which he is employed, yet if the injury is received while the employee is engaged in doing something incidental to the employment, though not strictly within the limits of the duties he is obliged to perform, the case will nevertheless be one for compensation. Then too, the thought is again applicable, as was expressed in the preceding paragraph, that the injury may arise by accident "in the course of" the employment, even though the act itself may be primarily personal to the employee, so long as it tends ultimately to react to the benefit of the employer.

There is no doubt in this case that it was the duty of the deceased to clean cars stored in the garage, including the very car in which his body was found; and the showing that he had the dust cloth

and the whisk broom with him in the car warrants the legitimate inference that he had got inside the car for the primary purpose of cleaning it. Indeed there is no claim that the deceased at any time throughout the night abandoned the usual course of his employment, unless it was that in starting the motor of the car, if he did, he performed a wholly unauthorized act, and produced a result out of which his death resulted, which was not a reasonable and rational consequence of what he was called upon to do.

In the determination of the case, let us adopt appellants' theory for argument's sake, and proceed upon the basis that the deceased did start the motor for the purpose of generating heat to warm himself while he was engaged in the work of cleaning the automobile. Even so, we cannot believe that such conclusion would warrant the finding that death was not by accident arising out of and in the course of his employment.

Certainly the hazard arising from the presence of carbon monoxide gas is one incidental to employment in a garage, and especially is this true in winter when a denser smoke comes from the exhausts of the automobiles, and when the doors of the building must of necessity be kept closed. How then can it be said that the death of the deceased from carbon monoxide poisoning was not by accident arising out of and in the course of his employment, unless it was because the particular risk was occasioned by his own heedless act in starting the motor when the doors, both of the automobile and of the building, were closed. It must be borne in mind, however, that this act, regardless of how heedlessly it was performed, was not wholly disassociated from and foreign to his employment, as was the conduct of the deceased in the Smith case, supra, upon which appellants rely, for granting that the act of the deceased in starting the motor was primarily designed to serve his own personal convenience, it also tended to react ultimately to the benefit of the employer as well, since the evident purpose was to keep the deceased warm enough to enable him to continue with his work in comfort. The hazard created was one by no means unusual to a garage; it bore a direct relation to the character of the employment in which the deceased was engaged; it was present in more or less degree no matter how carefully the business of the garage was conducted; and the fact that the act of the deceased himself gave rise to the hazard is of no vital significance so long as it was not wholly outside the scope of his employment, since the question of negligence, whether it be termed contributory or sole negligence, is of no consequence in a proceeding of this character, unless it be made to bear upon the question of intentional self-inflicted injury, which is not an issue in the case.

Our attention has been directed to the case of White Star Motor Coach Lines v. Industrial Commission (Ill. Sup.), 168 N. E. 113, which is based upon a state of facts much similar to those of the instant case, and which seems, in certain respects at least, to run counter to the views we have thus far expressed. There the deceased, who was a bus driver, went to his employer's garage about an hour before time for the bus to leave, and after starting the motor, climbed inside the bus to sleep. The court held that he had voluntarily incurred an additional risk not within the contemplation of his contract of service, and denied his dependents any relief on that account. That case we think has many points to distinguish it from the case at bar, such as the fact that the deceased had gone to the garage long before the time when duty called him to be there, and that his purpose was not to perform any services for his employer at the time, but to sleep until the time should arrive for his customary duties to begin. If the result reached by the court is to be put upon such grounds, there would seem to be both reason and authority for the decision; but if the intention was to say that the mere act of the deceased in starting the motor for a purpose other than to move the bus created a hazard in nowise arising out of and in the course of his employment, we should rather be obliged to take the view that the logic of the case was with the two judges who dissented from the majority opinion.

We cannot escape the conclusion, therefore, that in this instance there was a sufficient causal connection shown between the nature of the employment of the deceased and the hazard which produced his death to warrant the finding that his death was by accident arising out of and in the course of his employment. Such being true, the judgment of the circuit court affirming the award made by the commission should itself be affirmed, and the commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, affirmed. *Haid, P. J.,* and *Becker,* and *Nipper, JJ.,* concur.