(No. 5391.   April 2, 1930.)

JAMES W. STEWART, Claimant and Respondent, v. ST. JOSEPH LEAD COMPANY, Employer and Appellant, and MARYLAND CASUALTY COMPANY, a Corporation, Surety and Appellant.

[286 Pac. 927.]

Chas. M. Kahn, for Appellants.

Richards & Haga, for Claimant and Respondent.

LEE, J.—James W. Stewart, claimant, was by the Industrial Accident Board refused compensation prayed against his employer, appellant, St. Joseph Lead Company. He appealed to the district court where the board's action was reversed, and a judgment entered, awarding him a compensation stipulated by respective counsel· as reasonable.

From that judgment, the mining company and its surety, Maryland Casualty Company, appealed.

From the record, it appears that while employed as superintendent by appellant mining company, and residing with his family in a house furnished him by his employer, claimant accidentally severed his thumb below the distal joint while splitting wood, in order to prepare the evening meal. The issue turns upon the question, whether or not the splitting of this wood constituted a part of claimant's employment. The board concluded that it did not: the district court held that it did.

The facts as found by the board were determined solely from the testimony of claimant himself. With respect to his duties and his remuneration for the discharge thereof, under verbal contract with his employer, claimant testified:

"Q. And will you describe generally what your duties have been during the last seven years at that mine? A. Why, it was my duty to oversee all the work and be responsible for all supplies and work done and the electrical work, of course, the power plant, and that sort of stuff I had to take care of myself.

"Q. In general, what were the terms of your contract? A. I would say I was getting $210 a month and all expenses other than food and clothing.

"Q. And what supplies, if any, do they furnish you? A. Why, wood, water, lights and furnished house.

"Q. Do you care for all of the company's property which is there at the house and about the mine? A. Yes. . . . .

"Q. Now, the wood which you were cutting, Mr. Stewart, were you cutting wood or splitting wood? A. Splitting wood.

"Q. To whom did the wood belong? A. It belonged to the St. Joe Lead Company.

"Q. You were preparing it for what use? A. For the use of the house. . . . . .

"Q. State whether or not it was the arrangement under your contract of employment with the St. Joseph Lead

Company that you attended to the duty of cutting wood for the house as well as other domestic duties around the house?   A. Yes.''

Having testified on cross-examination that the company furnished the wood, the following colloquy ensued:

''Q. And was the wood originally cut from the company's property?   A. Yes.

''Q. And it was stacked up for your use?   A. Yes.

''Q. And it was in such lengths and widths so that it would require further treatment before it would go in the stove?   A. Yes.

''Q. Now, as I understand your duties, you were general superintendent of the property?   A. Yes.''

On redirect examination he testified:

''Q. This wood had been sawed into stove-wood lengths, had it, Mr. Stewart?   A. Yes.

''Q. And in order to use it in the cook-stove it was necessary to split it?   A. Yes.

''Q. It could not be used for cooking purposes at all until it was split, could it, Mr. Stewart?   A. No.''

Under the undisputed facts, the mining company furnished claimant wood, water, lights and a dwelling. The wood was cut by the company into proper stove lengths and by it stacked for claimant's use. Now, did its duty end here or was it compelled to proceed further and split the wood already stacked?   Claimant had testified that a part of his duty was to ''cut'' the wood; at no time did he testify that it was his duty to ''split'' it. Cutting and splitting are just ninety degreees apart. It is true that claimant invoked the element of necessity, declaring that without such splitting the wood so stacked would have been unavailable for his purposes. And he therefore concludes that the splitting was a part of his contract.

But the fact established is that the company only undertook to ''furnish'' him wood, a term that must be subjected to its reasonable and usual interpretation. Had the fuel furnished been coal instead of wood; and had the company dumped a salable load into claimant's yard, consist-

ing of lumps too robust for the fire-box of claimant's stove, would anyone seriously contend that the company would have been under duty to belabor the offending chunks into accommodating contours? Yet the duty in both cases must have been the same, viz., to furnish the material in such reasonable form as it is usually delivered in to the private consumer.

Claimant would avoid the conclusion by insisting that he did not stand in the shoes of the ordinary employee who chooses his own place of residence, and selects his own means of acquiring fuel; that he was required to live in a house on the premises where, "in order to live and thus meet the requirements of his contract with the company, he was forced to split wood for his own use." The patent response to this contention is that he was no more forced to split the wood in the one instance than in the other. In either case, it was a matter of doing it himself, or hiring someone else. In both cases, man power was available.

Judgment reversed. Costs to appellants.

Budge, Varian and McNaughton, JJ., concur.

Givens, C. J., dissents.

(April 19, 1930.)

ON PETITION FOR REHEARING.

LEE, J.—Respondent, Stewart, petitions for a rehearing, contending that the court's opinion was based upon a strained distinction between "cutting" wood and "splitting" wood that had been furnished him by his employer. Probably, the writer's crudity of expression was responsible for this interpretation of the language employed. The "cutting" of fire-wood delivered to one's premises unquestionably includes "chopping, splitting, sawing, whittling, breaking" or any other mode of adaptation to the end desired.

The distinction drawn by the court was that between the "cutting" of the wood later stacked for petitioner's use and the "splitting" or handling of it by petitioner after he had segregated his supply from the stack, .title to which stack was at all times in the employer.

However, the decision was not based upon "splitting" as opposed to "cutting," but upon the duty of the employer to *furnish* petitioner wood for fuel. We held the employer's duty discharged when it had delivered the wood in the usual and customary form, stacked in proper lengths for petitioner's use. When petitioner withdrew his supply from the stack, the employer's ownership ceased and petitioner's began. To hold otherwise would be to invite a *reductio ad absurdum*. When petitioner withdrew wood from the stack for the purpose of splitting the same he ceased to be a workman within the meaning of the Workmen's Compensation Act, and the injury sustained did not arise out of and in the course of his employment. The splitting of the wood was for his own convenience and for his sole benefit.

The employer had furnished petitioner a house in which to live, and could exercise no whit of dominion over it. It was for the time petitioner's castle from which he could hurl defiance at every trespasser including the chief executive of the employer itself. To say that the "split" wood still belonged to the employer and that by reason of having to live on the premises owned by the employer, the performance of domestic chores was an execution or furtherance of the employer's business is a construction a careful study of no authority we have found permits. Such chores, when required by the employer to be performed for others than petitioner and his family, would have been an entirely different matter.

To pursue petitioner's argument to its logical end, it would have to be held that he was in the exercise of his employment when he packed the wood into the house, stuck it into the stove, removed the ashes, swept the floor of chance droppings, and dusted off the front steps, in all of

which operations there would have been possibilities of stubbed toes, ripped nails, splinter-pierced fingers or scorched hands. The trouble with the case of *Ocean Accident etc. Co. v. Pallero*, 66 Colo. 190, 180 Pac. 95, is that the employer furnished its employee no wood at all, but indirectly set him to blasting it out of the forest. *Haller v. City of Lansing*, 195 Mich. 753, 162 N. W. 335, L. .R. A. 1917E, 324, is not in point at all. There, the employee at the noon hour went into a tool-house to eat his meal, and while lighting his pipe ignited gas escaping from a container. In *Northwestern Iron Co. v. Industrial Com.*, 160 Wis. 633, 152 N. W. 416, 417, where it was announced that ''To protect himself from undue and unnecessary exposure to the cold was a duty he owed his master as well as himself,'' the facts were that the accident occurred while the employee was engaged in the day's work, and had stepped aside to warm himself. In none of the cases cited did it appear that the employee was injured while performing around and about what was for the nonce his own vine and fig tree.

Petition for rehearing denied.

Budge, Varian and McNaughton, JJ., concur.

Givens, C. J., dissents.