COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| JAMES GRIFFIS, | § | No. 08-22-00141-CV |
| Appellant, | § | Appeal from the |
| v. | § | 368th Judicial District Court |
| KEVIN DALE DIDWAY, WILLIAM MARK DIDWAY, and EMMA GENE DIDWAY GRIFFIS, | § | of Williamson County, Texas |
| Appellees. | § | (TC# 22-0216-C368) |

## **O P I N I O N**

In this case, step-brothers battling over remainderman status pursuant to language in their late step-grandfather's will ask us for a declaratory judgment for the purpose of asserting potential future rights to a property on which their mother, Emma, lives.[1] James Griffis (James), who was born after his step-grandfather executed his will, is the younger step-brother of Emma's named-remaindermen children, Kevin and Mark Didway (the Didway Brothers). James filed this declaratory judgment action after he was informed that the Didway Brothers had negotiated with a developer to sell the property and wanted their mother—the property's life-estate holder—to authorize the sale.

---

[1] This case was transferred from our sister court in Austin, and we decide it in accordance with the precedent of that court to the extent required by TEX. R. APP. P. 41.3.

The trial court granted summary judgment dismissing James's declaratory judgment action thereby rejecting James's contention that the will gave a class gift to Emma's children, which would include James, and instead granted the Didway Brothers' counterclaim for declaratory relief establishing that the will did not create a class gift, and thus they were the only remaindermen under the will. On appeal, James contends the trial court erred in its interpretation of the will. In a cross-point, the Didway Brothers contend the trial court erred by not dismissing James's lawsuit on the ground that the statute of limitations had run on his claim due to a 2006 controversy over the remainderman status question. When Emma gave James her power of attorney over her life estate in the property and threat of a sale was extinguished, James filed a motion to dismiss his appeal as moot and set aside the trial court's orders, arguing that there was no longer a justiciable controversy giving the courts subject matter jurisdiction to issue a declaratory judgment.

As discussed below, because we determine that there was never a justiciable controversy giving rise to subject-matter jurisdiction, declaratory relief was not appropriate and the trial court's judgment is void. We dismiss the present suit for want of jurisdiction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Background facts

The facts in this case are not in dispute. The parties agree that in 1974, W. B. (Buck) Farris executed his Last Will and Testament (the Will) wherein he bequeathed a life estate in his Williamson County ranch (the Ranch) to his step-daughter, Emma, and named the Didway Brothers (her only two children alive at the time) as remainderman:

> I give, devise and bequeath to my beloved step-daughter, Emma Gene Didway, for her natural lifetime only all of my real property, including, but not limited to, 529 acres of land, more or less, known as the Joseph land or Joseph's Place, and 375 acres of land, more or less, known as the W. O. Dubois Place, and then and thereafter, upon her death, to her children Kevin Dale Didway and William Mark

Didway; and it is my desire and intention that Emma Gene Didway shall use and occupy the land and all and any real property of which I may die seized and possessed as she sees fit and appropriate, for her natural lifetime, and derive therefrom the benefits and income therefrom, and it shall then pass to her children as aforesaid in equal shares, share and share alike.

When the Will was executed, the Didway Brothers were approximately six and four years old. Emma and the Didway Brothers' father divorced, Emma remarried in 1976, and she gave birth to James on October 26, 1978. Buck did not change his will to name James as a remainderman. After Buck passed away on February 3, 1982, when James was three years old, the will was probated with Emma as the executor. Both before and after Buck's death, Emma and James's father lived on the Ranch where they raised James, while the Didway Brothers lived primarily with their father. According to James, his "mom has always told [him] that Buck chose to leave his real property to her and her children as a thank you for the way [she] took care of him in his old age."

The parties appear to agree that the question of whether James could be considered a remainderman under the Will first arose in 2006 when the Lower Colorado River Authority (LCRA) sought an electric line easement on the Ranch, which purportedly required the life tenant and all remaindermen to approve. At that time, according to James, the Didway Brothers said they wished to include him as a remainderman and scheduled a meeting with an attorney of the Didway Brothers' choosing to discuss the matter. At their meeting, the attorney advised James that he was not included as a remainderman in the Will. James did not review the Will or consult with his own attorney; instead, he accepted the attorney's opinion at the time because he trusted that his half-brothers had his best interest in mind. Emma, as the life tenant, and the Didway Brothers, as remaindermen, signed the LCRA easement. According to James, although he remained involved in the Ranch's business, the Didway Brothers repeatedly reminded him that he was not a remainderman under the Will.

In 2021, the Didway Brothers informed James that they intended to sell the Ranch. According to James, he reviewed the Will at that point for the first time and realized the Will did not exclude him. In February 2022, Emma informed James that the Didway Brothers had negotiated a sale of the Ranch and wanted her to sign a statement identifying the Didway Brothers as the only remaindermen under the Will. James understood that Emma neither signed a purchase and sales contract nor the statement.

## B. The parties' claims and counterclaims

Days after his conversation with Emma, James filed a lawsuit naming Emma and the Didway Brothers as defendants, seeking a declaratory judgment under the Uniform Declaratory Judgment Act (UDJA) that the Will made a remainderman class gift to all of Emma's children, including James. He asserted that a justiciable controversy under the UDJA had arisen regarding the Will's interpretation when the Didway Brothers were purportedly negotiating the sale of the Ranch. The Didway Brothers filed an answer to the petition as well as a counterclaim for declaratory relief seeking a contrary interpretation of the Will and a declaration that Buck did not make a class gift to all of Emma's children but only to the two of them.[2]

## C. The cross-motions for summary judgment

The Didway Brothers thereafter filed a traditional motion for summary judgment, contending that (1) the statute of limitations had run on James's UDJA claim before he filed his petition because he had been on notice of the Didway Brothers' position since 2006 when the will-interpretation issue arose in connection with the LCRA easement; and (2) even if the statute had not yet run, Buck's intention was not to make a class gift to Emma's children, and James was not

---

[2] Emma initially denied the allegations in both of the parties' pleadings but later explained that she did not wish to take sides in her sons' dispute and that she was only named as a party due to her status as a life tenant.

a remainderman under the Will. James opposed the summary judgment motion and filed his own cross-motion for summary judgment. James asserted that the statute of limitations had not run on his claim, as any claim brought by a remainderman did not start running until the life tenant passed away, and Emma was still alive. In the alternative, James argued that at the earliest, his claim arose in 2021 or 2022, when the Didway Brothers announced their intent to sell the Ranch, which he argued was the basis of his claim. James further argued that the 2006 easement was irrelevant to the statute-of-limitations issue because he was not challenging the easement's validity and because his future title rights in the Ranch could not be determined based solely on the fact that the Didway Brothers were the only ones who signed the easement as remaindermen, as the easement did not convey title or otherwise establish the parties' respective ownership rights.

As to the merits of his claim, James argued he was entitled to a declaratory judgment construing the Will to mean that Buck had made a class gift to all of Emma's children, including him, such that he and his step-brothers were all remaindermen of Emma's life estate. In essence, James argued that he is a pretermitted heir who Buck intended to include in his Will and that Buck had not expressly named him in the Will because he had not yet been born when the Will was drafted.[3]

### D. The trial court's judgment and James's subsequent motion

In May 2022, the trial court denied James's motion in its entirety and granted the Didway Brothers' motion in part with respect to their argument that the Will did not make a class gift but denied it in part as to their argument that the statute of limitations had run on James's claim. The

---

[3] James attached two affidavits in support of his opposition to the Didway Brothers' motion and in support of his own motion. The Didway Brothers objected to the affidavits on various grounds, but it does not appear that the trial court ruled on their objections.

trial court dismissed James's claim with prejudice and decreed that James take nothing on his claim for declaratory relief. This appeal followed.

## II.   ISSUES ON APPEAL

On appeal, James raises a single issue, contending the trial court erred in not construing the Will as creating a class gift to all of Emma's children. The Didway Brothers raise a single issue on their cross-appeal, contending the trial court erred by finding that the statute of limitations had not run on James's claim.

## III.   MOTION TO DISMISS APPEAL AS MOOT

In October 2022, while the case was pending in this Court, James filed a motion to dismiss the appeal as moot and to vacate the trial court's judgment. To the motion, James attached his mother's affidavit indicating that the Ranch would not be sold during her lifetime without James's consent. In her affidavit, she averred:

> In February 2022, I considered selling my life estate in the Farris Ranch. This was before the lawsuit started. This sale is no longer going to occur. Since the lawsuit started, I am no longer interested in selling my life estate, unless James approves of the sale of my life estate. I have given James a power of attorney over my life estate to handle my affairs with regard to the life estate.

In the motion, James argues that this Court now lacks subject-matter jurisdiction over the case and cannot consider the appeal, as the justiciable controversy giving rise to the action ceased to exist based on the evidence he presented with his motion to dismiss and the appeal is moot. James further argues that when a case becomes moot at this stage, previous orders must be set aside and the case dismissed altogether.

Though the Didway Brothers argue that "[James] is completely incorrect on the law and his motion should be summarily denied by this Court," their response to the motion neither objects

6

to Emma's affidavit nor disputes her claim that no sale is pending. They simply argue the UDJA affords a right to a determination independent of whether a sale is pending.

## IV. SUBJECT-MATTER JURISDICTION

As a threshold matter, we first analyze whether this Court has and the trial court had subject-matter jurisdiction. Subject-matter jurisdiction is required; without it, the courts' opinions are advisory, and advisory opinions are not within the purview of the judicial branch of government. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444-45 (Tex. 1993). Accordingly, subject-matter jurisdiction may be raised *sua sponte* by the courts, even for the first time on appeal, as we do here. *Id.* at 445.

### A. Standard of review

We review subject-matter jurisdiction questions de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). For a trial court to have subject-matter jurisdiction, a controversy must be ripe. *Southwestern Electric Power Co. v. Lynch*, 595 S.W.3d 678, 683 (Tex. 2020); *Mayhew v Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). Thus, ripeness, the component of jurisdiction that focuses on when an action may be brought, is subject to de novo review. *Id.*

### B. Applicable law

Ripeness "emphasizes the need for a concrete injury for a justiciable claim to be presented." *Patterson v. Planned Parenthood of Hous. & Se. Texas, Inc.*, 971 S.W.2d 439, 442 (Tex. 1998) (citations omitted). To determine whether a case is ripe, we must look at whether the claim is anchored in a real and present harm, as opposed to harm anchored in "events that have not yet come to pass." *Lynch*, 595 S.W.3d at 683 (quoting *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.2d 849, 852 (Tex. 2000). "Thus the ripeness analysis focuses on whether the case involves 'uncertain

or contingent future events that may not occur as anticipated or may not occur at all.'" *Gibson*, 22 S.W.2d at 852 (quoting *Patterson*, 971 S.W.2d at 442, citing 13A Wright et al., Federal Practice and Procedure § 3532, at 112 (2d ed.1984)). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Loya Ins. Co. v. Avalos*, 610 S.W.3d 878, 883 (Tex. 2020) (quoting *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995) (internal citations omitted)).

The UDJA is a *sui generis* procedural vehicle designed "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations;" it is remedial in nature and cannot independently establish jurisdiction or enlarge jurisdiction. *Texas Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002) (citing TEX. CIV. PRAC. & REM. CODE ANN.§ 37.002(b)); *see also Allstate Ins. Co. v. Irwin*, 627 S.W3d 263, 269 (Tex. 2021) (recognizing that the UDJA action is neither legal nor equitable, *but sui generis*); TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a). Given the unique nature of the UDJA, a declaratory judgment is appropriate only if (1) a justiciable controversy exists as to the rights and status of the parties, and (2) the controversy will be resolved by the declaration sought. *See Allstate Ins. Co.*, 627 S.W.3d at 269 ("A declaratory judgment is . . . appropriate when a real controversy exists between the parties, and the entire controversy may be determined by judicial declaration.").

Relevant to this case, the UDJA provides that "[a] person interested under a . . . will . . . may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a). The Code further provides that a person interested under a will, including a devisee or heir, of the estate, "may have a declaration of rights or legal relations in respect to

8

[an] estate: (1) to ascertain any class of creditors, devisees, legatees, heirs, next of kin, or others." *Id.* § 37.005(1).

The remainderman right over which the parties are litigating is a future potential interest in title to real property, capable of becoming a possessory estate only after the natural termination of the preceding estate—unless title is purportedly transferred prior to Emma's death. *See ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 870 (Tex. 2018) (characterizing future interests).

### C. Analysis

The Supreme Court of Texas has recognized that the UDJA can provide "a speedy and effective remedy for the determination of the rights of the parties when a real controversy has arisen and even before the wrong has actually been committed," but that does not extinguish the requirement of a ripe, justiciable controversy to confer jurisdiction. *Cobb v. Harrington*, 190 S.W.2d 709, 713 (1945); *see also Lynch*, 595 S.W.3d at 685; *Juliff Gardens, L.L.C. v. Texas Comm'n on Environmental Quality*, 131 S.W.3d 271, 277 (Tex. App.—Austin 2004, no pet.). Because the right at issue is future title to the subject property, the question over the justiciable controversy here is rooted in a transfer of title.[4] But in this case, the alleged controversy was only over a *proposed* sale of the Ranch. James filed a declaratory action over whether he was a remainderman under the Will while the Didway Brothers were purportedly negotiating a sale of the Ranch. At no point prior to the trial court's determination did any party produce evidence of

---

[4] In other cases, the remainderman of a life estate could have a claim against a life tenant rooted in a justiciable controversy over committing "waste" to the subject property.

9

an actual sales contract,[5] which would have created a ripe, justiciable controversy implicating the trial court's jurisdiction.

Conversely, the Didway Brothers argue that the Texas Civil Practice and Remedies Code gives the parties "[t]he right to have the determination made [] independent[] of the right of sale[.]" However, given the unique nature of the UDJA, a declaratory judgment is appropriate only if (1) a justiciable controversy exists as to the rights and status of the parties, and (2) the controversy will be resolved by the declaration sought. *See Allstate Ins. Co.*, 627 S.W.3d at 269 ("A declaratory judgment is . . . appropriate when a real controversy exists between the parties, and the entire controversy may be determined by judicial declaration."); *Lynch*, 595 S.W.3d at 684 ("UDJA does not authorize a court to decide a case in which the issues are hypothetical or contingent—the dispute must still involve an actual controversy."). While the evidence reflected that the possibility of a justiciable controversy arose in February of 2022, when the Didway Brothers negotiated the sale of the Ranch and wanted to go forward with the transaction—it was contingent upon a sales contract. And again, there was never any evidence in the record of a contract for sale of the Ranch, which would have been a real controversy a judicial declaration would have resolved.

Because there was never a "genuine conflict of tangible interests" that would have been resolved by the trial court's ruling, it lacked subject-matter jurisdiction. *Lynch*, 595 S.W.3d at 686; *see also Irwin*, 627 S.W.3d at 269. A judgment in a lawsuit over which the trial court had no subject-matter jurisdiction to render is void. *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990) (referencing *Cook v. Cameron*, 733 S.W.2d 137, 140 (Tex. 1987) and *Browning v. Placke*, 698 S.W.2d 362, 362 (Tex. 1985)).

---

[5] This Court is not making any statement as to the legal effect of a sales contract entered into on the seller's side by a life-estate holder and presumed remaindermen.

10

## VI.  CONCLUSION

Accordingly, we dismiss the present suit as moot for lack of subject-matter jurisdiction. The May 31, 2022 judgment of the trial court in cause number 22-0216-C368 in the 368th Judicial District Court of Williamson County is void in its entirety as a matter of law.


LISA J. SOTO, Justice

April 28, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.
Palafox, J. (Concurs without written opinion)