ELIZABETH B. GARDNER, an Infant, by CHARLES H. GARDNER, Her Guardian ad Litem, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 24499.)

CHARLES B. GARDNER, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 24500.)

Court of Claims, February 9, 1938.

*J. T. & C. H. Gardner* [*Francis D. McCurn* of counsel], for the claimants.

*John J. Bennett, Jr., Attorney-General* [*James H. Glavin, Jr., Assistant Attorney-General,* of counsel], for the defendant.

GIBBS, J. The above-entitled claims were filed to recover damages for the alleged negligence of the State of New York in failing to provide proper care and supervision over and resulting in injury to Elizabeth Gardner, the infant claimant, a pupil in an elementary grade at the Cortland Normal School, Cortland, N. Y.

The accident occurred on January 16, 1936, in a regular physical education class held in the foyer of the gymnasium at said school which was entirely under the control of the State.

Competent and duly qualified supervisors and teachers for the various departments had been selected and were in charge, and all necessary equipment had been furnished and was in use for all of the activities of the school, one of which was that of physical education. The pupils, among whom was the infant claimant, were seventh grade girls doing the usual, routine and required physical exercises prescribed by the syllabus adopted by the Education Department of the State for the use in elementary schools.

At the time in question these girls had been divided into groups of eight or ten pupils, and each group was directly supervised by a student teacher who stood at the end of the mat upon which each group was doing the prescribed exercises. The student teacher, in her junior year, in charge of the particular group of which the infant claimant was a member, was taking the physical education course for the purpose of qualifying herself as a supervisor and teacher of physical education, and she was an especially well-quali-fied and apt student, with a good deal of experience in directing group exercises in the normal and other elementary schools of Cortland. She was under the direct supervision of the supervisor in charge of the physical education course of the normal school, and who was at the moment of the accident in the adjoining main gymnasium, where a group of boys were performing physical exercises, and he had been in the foyer that morning and was supervising both the boys' and the girls' exercises on the particular occasion in question.

The particular stunt which caused the injury complained of was a head stand. The pupils put the palms of their hands flat upon the floor with their heads resting upon the floor and balanced with their feet straight upwards. Each pupil was assisted in maintaining a balance by another pupil of the same class, and at a signal given by the one making the stand, was released and rolled over in a somersault.

Physical exercises and education were a part of the regular schedule and practice courses in the school for all of the students, adapting those exercises to the various grades, ages and ability of the pupils to perform them, and the infant claimant had been through all of these preliminary exercises.

The infant claimant had made this head stand in connection with her regular physical education work twice before in the fifth and sixth grades and once before in the seventh grade, and in addition to that had had all of the experience of watching the other girls perform the same stunt.

On this day she was assisted, according to the usual practice, in balancing on her head and hands by another grade pupil under the direction of the pupil teacher as a final examination for her term work. The infant claimant said that at her signal that she was balanced, the other pupil released her, and she completed the somersault, but in so doing felt a sharp pain and was unable to turn her head when she stood up. While performing this stunt the student teacher stood at the end of the mat on which the head stand was being done and was directing the squad, all of which was and had been the usual custom and practice of the school. The injury to her neck, consisting in the displacement of one vertebra about one-thirty-second of an inch, was apparently one of those entirely unexpected and unpreventable accidents which might happen, both in play which is not supervised as well as in a regular course of instruction.

Dr. Sornberger, who attended the infant claimant, testified that head stands were very common stunts for children, and that it was not a usual or normal result for a fractured vertebra to happen in such cases, and that it might depend upon how the particular child did it as to whether it would be a competent producing cause of the injuries described, rather than the act itself; also, that somersaults were very common stunts for children at play by themselves.

Paul Krimmel, a witness for the infant claimant, who was the director of physical education of the public schools of Syracuse, with twenty years of experience in physical education, testified that he helped compile the syllabus, and characterized self-testing stunts, such as the head stand, as being among the " most worth while physical education activities." The stunt in question was one which was proper for fourth grade students, whereas the infant claimant was a seventh grade pupil, eleven years of age, who, as she herself testified, was an athletic girl, having been accustomed to swim, dive, skate and ski, and was necessarily larger and better developed than a child in one of the lower grades.

Mr. Krimmel also stated that the practice which was carried out in the Cortland Normal School in using normal students who were in training as teachers, which is the particular object of maintaining normal schools by the State, as practice teachers, under supervision of regular faculty members, was a generally prevailing custom and practice in normal schools and State colleges in this and other States. He also stated that whether these practice or student teachers should be in their senior year or junior year would depend upon the qualifications of the particular student teacher, and was a matter of judgment for the supervising officials.

This claim seems to rest upon the assumption that a duly licensed supervisor or teacher was not actually in the foyer of the gymnasium at the immediate time this accident happened. There is testimony that during the day of the accident the teacher in charge was in and about the foyer and gymnasium. Even if the letter of the law as contained in the syllabus required that such a teacher should be actually present, nevertheless, to my mind, the absence of such teacher was not the cause of the accident.

Dr. John P. McNeil, who was the head of the physical education department of the school, was supervising the classes of the girls in the foyer, as well as the boys in the general gymnasium, and he had a competent practice student in charge of the particular group of which the infant claimant was a member, but the evidence nowhere discloses that even if a duly licensed supervisor had been present anything different than was done could or would have been done which would have prevented this accident. The syllabus specifically states (p. 159) that " classes may be divided into squads under pupil leadership," which is exactly what was done in this case.

It is axiomatic that the law, generally speaking, and in the absence of express statute, knows no absolute liability — no one is made an insurer of his acts; he is liable only for injury arising from a failure to act with the degree of forethought and intelligence that characterizes the conduct of prudent persons in general. There are many injuries to persons and property for which the law furnishes no redress — *damnum absque injuria.*

It has long been recognized that no action will lie for injuries attributable to what is termed inevitable or unavoidable accident. In other words, if no fault or negligence is chargeable to either of the parties to the occurrence upon which the action is founded, the loss and injury will be allowed to remain where it has fallen, or, if negligence is established, if it is not a proximate cause of the injury, then there can be no recovery. The injury in this case was caused by what may be termed a pure accident.

The term " accident " in legal signification is said to be difficult to define. Judge STORY said on that subject: " By the term *accident* is here intended, not merely inevitable casualty, or the act of providence, or what is technically called *vis major*, or irresistible force; but such unforeseen events, misfortunes, losses, acts, or omissions, as are not the result of any negligence or misconduct in the party." (Story on Equity [3d ed.], § 78.)

Other definitions are, in substance, something that happens by chance or unexpectedly, taking place not according to the usual course of things; an undesigned and unforeseen occurrence of an

unfortunate character, resulting in bodily injury. (*Raven Halls v. United States Fidelity & Guaranty Co.*, 142 Misc. 454.) Also, as an unlooked-for mishap or an untoward event which is not expected or designed; happening by chance. (*Moore v. Lehigh Valley R. R. Co.* (169 App. Div. 177.) Also, accident or accidental has been defined as " happening by chance, or unexpectedly taking place, not according to the usual course of events; casual; fortuitous." (*Naud v. King Sewing Machine Co.*, 95 Misc. 676.) There are many shades of distinction and differences in the term " accident," depending upon the circumstances in each case. The law, however, has fixed a standard for determining whether an act is negligent and actionable or is accidental and without legal redress, and that standard is the conduct of the average, prudent person.

I am satisfied that, subject to all the requirements and tests known to the law, the conduct of the teachers at the Cortland Normal School in permitting the infant claimant to stand on her head under the circumstances of this case, was not of such a nature that could be defined as negligence, and, further, that the injury complained of was not one which an ordinary, reasonable and prudent person ought to have foreseen; in other words, this was clearly an accident for which there can be no recovery.

To secure justice each case must be decided upon its own peculiar facts. The cases called to the attention of the court by the claimant's attorney are so widely different in fact that they are in no sense controlling in these claims.

I recommend a dismissal of both claims on the merits.

BARRETT, P. J., concurs.