The within action was returned to court on the first Tuesday of June, 1949. It was originally brought against the named defendant and the city of New Haven. On September 12, 1949, the action was withdrawn as to the city. The trial to the court was had on January 16 and 17. Upon *Page 184 
the completion of the trial, counsel for the plaintiff asked leave to file a brief on the law at a later date. The brief has now been filed and examined. All that remains is the rendering of a decision as a basis for the entry of judgment.
As required by law, the plaintiff, a minor, brought the action through one of his parents. It is a tort action to recover damages for personal injuries. On May 25, 1948, the plaintiff was a pupil at the Susan S. Sheridan Junior High School of New Haven, a public school in the New Haven public school system. He was then thirteen years of age. Shortly after 9 o'clock on the morning of that day he and other boys constituted a squad of pupils in a physical education class being conducted in the schoolyard under the direction and supervision of the defendant, a physical education instructor at the school. The program of the hour was that of high jumping. The apparatus employed consisted of two vertical bars of metal composition inserted in the ground at a distance of eight feet apart, and a bamboo crossbar. The crossbar could be raised or lowered at will, and rested on pegs located on the opposite side of the vertical uprights from which a jumper would approach in the course of executing a jump. Directly beneath the crossbar, and extending for some feet beyond in the opposite direction from which a jumper would approach the apparatus, the earth had been previously loosened by a shovel and raked at intervals during the program in force. This area was referred to at the trial as "the pit." Its dimensions were about seven feet in width and twelve feet in length. The area comprising it had been stirred up and loosened for a depth of twelve to fifteen inches and had a surface spreading of sawdust.
On that morning the jumping started with the crossbar raised to twenty-four inches. The defendant had first demonstrated how the act was to be executed. The starting point was fifteen feet away from the apparatus and located at an angle to it. Each jumper, therefore, would approach the objective from an angle with the crossbar being somewhat to his right. The execution of a jump involved a moderate run requiring a gauge of pacing so as to permit the right leg of the jumper to clear the crossbar before his left leg.
After the boys in the plaintiff's squad, including the plaintiff who was squad leader, had completed the twenty-four inch jump, the crossbar was raised an additional inch for the next try. In this manner the crossbar eventually reached a level of *Page 185 
thirty-four and one-half inches. This level brought the crossbar at a height between the plaintiff's knees and his waist line. When the plaintiff first attempted to execute the jump at this level, his confidence failed him as he approached the crossbar. He testified that he said to the defendant, "I can't do it," to which the defendant replied, "Go ahead, jump, you can do it." In any event the plaintiff returned to the starting point, and again attempted to clear the crossbar. It was this act which resulted in the plaintiff's sustaining a fracture of the thigh bone of his left leg. The litigation at bar has resulted.
The extent of the plaintiff's injuries, together with medical expenses incurred, are such as to justify a judgment for the full amount of damages asked, namely, $5000, in the event of a determination of liability on the part of the defendant. The latter's counsel concedes this to be so. Actually the only controversy relates to the question of liability.
Paragraph 5 of the complaint recites the allegations of negligence upon which the plaintiff's case is rested. It reads: "The fall of the Plaintiff was occasioned by the negligence and carelessness of the Defendant, Allan Zimmerman, in that he caused the Plaintiff to jump over said pole which was not a reasonably safe distance from the ground; in that he did not act as a reasonably prudent person in ordering the Plaintiff to jump over said pole; in that he failed to heed the Plaintiff's protestations against jumping over said pole; in that he ignored and did not heed the fears which the Plaintiff expressed over jumping as ordered; and in that said Defendant ordered the Plaintiff to jump over said pole although the Plaintiff expressed his fear of and unwillingness to do so."
Earlier it was stated that the plaintiff testified that he was ordered by the defendant to attempt the jump after stating to the defendant that he could not do it. The majority of the witnesses at the trial testified that they heard no such statement of the plaintiff and no such order was given by the defendant. So also the defendant testified to the same effect. The same division of testimony relates to what immediately preceded the plaintiff's fall. The minority, including the plaintiff, testified that his right leg cleared the crossbar, that his left leg did not, and that he fell with a thud to the ground, partly in and partly out of the pit, with his left leg under him. The majority of witnesses, including the defendant, testified that the plaintiff never cleared the ground in the attempt to execute the jump; but *Page 186 
that his feet seemed to become entangled when he was about to jump, resulting in his body going against the crossbar which yielded, and his falling entirely into the soft area called the pit.
The court finds that the defendant did not order the plaintiff to execute the jump over the latter's protestations; and that the plaintiff did not reach the point of actually clearing the ground in the act of jumping. It is found that his feet in some bizarre manner became entangled and it was this occurrence which caused him to fall and sustain the injuries he suffered. So also it is found that the apparatus in question, including the pit, was reasonably safe for boys of the plaintiff's age. In point of fact the plaintiff was four months older than the average age of his squad.
Citations of authorities from the plaintiff's brief, with specific reference to Restatement, 2 Torts § 320, and case note, 4 N.C. C. A. (N.S.) 34 et seq., do not sanction a recovery of damages on the facts and findings in the case at bar. The plaintiff's mishap was a pure accident for which no one can be held chargeable in law. See discussion of the Court of Claims of New York in Gardner v. New York, 166 Misc. 113. The test to be applied is, "`would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?'". Collins v. City National Bank Trust Co.,131 Conn. 167, 170. The answer is "No." As such it is decisive of the case as pleaded and tried.
The result obtained would still be the same even though the court accepted in its entirety the plaintiff's version of what had transpired immediately before his fall. This circumstance would not affect the legal conclusion reached in the light of the other subordinate facts.
Bush v. Norwalk, 122 Conn. 426, cited by the plaintiff in support of his position, is to be distinguished. The only similarity between the two cases is that both plaintiffs were injured by a fall in the course of a class in physical education at a public school. Beyond that similarity the cases differ in essential respects. This difference extends to the facts involved and to the alleged cause of action recited in the respective complaints. The case at bar is one in negligence. Even though the alleged cause of action could be interpreted as one for nuisance having its origin in negligence (the complaint would hardly justify such a *Page 187 
construction), the evidence would not warrant a finding of a condition the natural tendency of which was to create danger and inflict injury upon the person of the plaintiff.
 Further discussion would add nothing of value. From what has been said judgment is required to be entered for the defendant. Plaintiff's counsel are complimented for the earnestness of their advocacy. In the last analysis no case is better than its facts.